# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF GEORGIA
# MACON DIVISION

| | | |
|---|---|---|
| DIANN L. MOODY, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 5:20-cv-00061-MTT |
| | ) | |
| v. | ) | Judge Marc Thomas Treadwell |
| | ) | |
| SYNCHRONY BANK and DOES 1-10 inclusive, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

## DEFENDANT SYNCHRONY BANK'S MEMORANDUM
## IN SUPPORT OF ITS
## <u>MOTION TO DISMISS PLAINTIFF'S COMPLAINT</u>

THE GILROY FIRM
Monica K. Gilroy, Esq.
Georgia Bar No. 427520
Email:Monica.Gilroy@gilroyfirm.com
Matthew F. Totten
Georgia Bar No. 798589
Email:Matthew.Totten@gilroyfirm.com
*Counsel for Defendant Synchrony Bank*

THE GILROY FIRM
3780 Mansell Road, Suite 140
Alpharetta, Georgia 30022
(678) 280-1922 Main Number
(678) 280-1923 Facsimile

# <u>TABLE OF CONTENTS</u>

Page

1.  Plaintiff's TCPA Claim Based on Use of an ATDS Without Consent
    Should Be Dismissed Because Plaintiff Does Not Allege that Synchrony
    Used an ATDS Under Controlling Case Law. ....................................................6

2.  The TCPA Claim Fails for the Additional Reason that Plaintiff Cannot
    Unilaterally Withdraw Consent. .......................................................................10

3.  Plaintiff's FDCPA Claim Fails Because the FDCPA Does Not Apply to the
    Collection of One's Own Debts. .......................................................................11

4.  Plaintiff's Georgia Fair Business Practices Act Claim Fails. ...........................13

    a.  The GFBPA does not apply to actions otherwise regulated. .....................13

    b.  The GFBPA does not apply to actions that solely impact the individual
        Plaintiff. ...................................................................................................14

    c.  The conduct cited by Plaintiff does not resemble the unfair or deceptive
        as cited in the GFBPA. .............................................................................14

5.  Count IV Seeking Attorneys' Fees and Count V Seeking Additional
    Damages Based on Plaintiff's Age Necessarily Rely on the Other
    Inapplicable Claims and Should Be Dismissed..................................................15

6.  Plaintiff Is Estopped From Maintaining This Suit Due to the Doctrine of
    Laches. ...............................................................................................................17

7.  Plaintiff's Claims Are Limited Due to the Expiration of the Statute of
    Limitations..........................................................................................................19

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*ACA Int'l v. Fed. Commc'ns Comm'n*,
    885 F.3d 687 (D.C. Cir. 2018) ................................................................9

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................................6

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................................5, 6

*Black Warrior Riverkeeper, Inc. v. U.S. Army Corps of Engineers*,
    781 F.3d 1271 (11th Cir. 2015) ...........................................................17

*Bradley v. Univ. Sys. of Ga.*,
    1:10-CV-0720, 2010 WL 1416862 (N.D. Ga. Mar. 22, 2010) ............16

*Chancellor v. Gateway Lincoln-Mercury, Inc.*,
    223 Ga. App. 38, S.E.2d 799 (Ct. App. 1998) ....................................13

*Coffey v. Braddy*,
    834 F.3d 1184 (11th Cir. 2016) ...........................................................17

*Cook v. Campbell*,
    482 F.Supp.2d 1341 (M.D. Ala. 2007) ................................................16

*Dominguez v. Yahoo, Inc.*,
    894 F.3d 116 (3rd Cir. 2018) .................................................................7

*Gadelhak v. AT&T Servs., Inc.*,
    No. 19-1738, 2020 WL 808270 (7th Cir. Feb. 19, 2020) .................7, 9

*Glasser v. Hilton Grand Vacations Co., LLC*,
    948 F.3d 1301 (11th Cir. 2020) .........................................................7, 8

*H. C. Duke & Son, LLC v. Prism Mktg. Corp.*,
    No. 11-4006, 2011 U.S. Dist. LEXIS 126741 (C.D. Ill. Nov. 2,
    2011) ......................................................................................................3

*Harris v. Liberty Cmty. Mgmt., Inc.*,
   702 F.3d 1298 (11th Cir. 2012) .........................................................................14

*Lamb v. Salvage Disposal of Ga.*,
   244 Ga.App. 193, 535 S.E.2d 258 (2000) .........................................................15

*Madura v. Lakebridge Condominium Ass'n Inc.*,
   382 Fed. App'x. 862 (11th Cir. 2010) ..........................................................11, 12

*Medley v. Dish Network, LLC.*,
   8:16-cv-02534-CEH-CPT, 2020 WL 2092594 (11th Cir. May 1,
   2020) ..................................................................................................................10

*Oil Express Nat'l v. D'Alessandro*,
   173 F.R.D. 219 (N.D. Ill. 1997)..........................................................................3

*Pillitieri v. City of Flagler Beach*,
   3:16-cv-1121-j-34PDB, 2017 WL 3840433 (M.D. Fla. Sept. 1,
   2017) ..................................................................................................................16

*Sheppard v. Bank of Am., N.A.*,
   542 Fed. Appx. 789 (11th Cir. 2013) (u*npublished*) ...................................13, 16

*Solis v. CitiMortgage, Inc.*,
   700 Fed. Appx. 965 (11th Cir. 2017)..................................................................18

*Zeeman v. Black*,
   156 Ga.App. 82, 273 S.E.2d 910 (1980) ............................................................13

**Statutes**

15 U.S.C. § 1692a(6) .................................................................................................12

15 U.S.C. § 1692e .....................................................................................................11

15 U.S.C. § 1692f .....................................................................................................11

15 U.S.C. § 1692k(a)(3) ............................................................................................15

15 U.S.C. § 1692k(d) ................................................................................................18

28 U.S.C. § 1658(a) ..................................................................................................18

47 U.S.C. § 227(a)(1).................................................................................................7

O.C.G.A. 10-1-396(1) ........................................................................................13

O.C.G.A. § 10-1-390 .........................................................................................15

O.C.G.A. § 10-1-401 .........................................................................................18

O.C.G.A. § 10-1-850 .........................................................................................15

O.C.G.A. § 10-1-851 .........................................................................................16

O.C.G.A. § 13-6-11 .....................................................................................15, 16

Defendant Synchrony Bank ("Synchrony"), by counsel, respectfully moves this Court to dismiss the Complaint ("Compl.") of Plaintiff Diann L. Moody ("Plaintiff") pursuant to Federal Rule of Civil Procedure 12(b)(6).  In support of this Motion, Synchrony states as follows:

## **INTRODUCTION**

Plaintiff asserts claims against Synchrony alleging violations of: the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA"); the Fair Debt Collection Practices Act, 15 U.S.C. §1692, *et seq.* ("FDCPA"); and Georgia Fair Business Practices Act, O.C.G.A. § 10-1-390, *et seq.* ("GFBPA").  Plaintiff further claims entitlement to "bad faith attorney fees" and that Synchrony's actions were an unfair or deceptive practice towards the elderly purportedly in violation of O.C.G.A. § 10-1-850, *et seq.*

Based on the plain language of the TCPA and well-established case law interpreting it, the Court should dismiss Plaintiff's TCPA claim in part, to the extent it is based on calls placed using an automatic telephone dialing system ("ATDS"). Plaintiff alleges that Synchrony placed calls to her cellular phone for the purpose of debt collection while using an ATDS.  However, the Eleventh Circuit adopted a narrow interpretation of the statutory definition of an ATDS, which mandates dismissal of this claim to the extent it is predicated on calls placed using an ATDS.

Moreover, recent decisions have held that credit card holders cannot unilaterally withdraw consent to receive telephone calls from their credit card provider when that consent is given in a bargained-for contract. Accordingly, Plaintiff was unable to unilaterally withdraw consent to receive telephone calls, even if they were made via an ATDS or with a pre-recorded voice.

Plaintiff's claim for violation of the FDCPA is misplaced as the FDCPA does not apply to the collection of one's own debts. Plaintiff cannot dispute that when Synchrony placed calls to Plaintiff they were for the purpose of collecting debts Plaintiff allegedly owed to Synchrony. For this reason, Plaintiff's FDCPA claim cannot proceed.

The GFBPA does not apply to areas of the consumer marketplace that have been regulated. Plaintiff's Complaint alleges that Synchrony made telephone calls to Plaintiff, an area of consumer law that is already regulated by the Federal Communications Commission. Further, making telephone calls without any misrepresentations do not involve deception or unfair practices as do the extensive list of examples set forth in the statute.

Plaintiff's other two counts are dependent on her ability to maintain the first three counts. As those claims should be dismissed, her causes of action for attorneys' fees and damages for deceptive or unfair business practices towards the elderly cannot stand.

Furthermore, Plaintiff demonstrates laches in alleging that she withdrew consent January 1, 2014 but waited over six years without taking any actions or submitting any complaints.  Many of the purported calls would have taken place beyond the statute of limitations and are not actionable even if the TCPA claim were allowed to proceed.

For all of these reasons, as more fully explained below, the Court should dismiss the Complaint in its entirety.  In the event any claim is not dismissed, its scope should be limited to calls made within the applicable statute of limitations.[1]

## ALLEGED FACTUAL BACKGROUND

Though not specifically alleged in the Complaint, it is evident by the facts set forth therein that prior to January 1, 2014, Plaintiff had entered into debtor creditor relationship with Synchrony and fallen into default on that credit card.  *See* Compl. ¶¶ 13, 17, 92, 98.  It is further implied that prior to January 1, 2014, Plaintiff had provided her cellular phone number to Synchrony as a means of contacting her and consented to receive telephone calls from Synchrony on her cellular phone.  Compl. ¶ 15 (alleging that on that date she purportedly revoked her consent).  It is inherent

---

[1] Filing a motion under Rule 12 "has the effect of delaying the time within which a party must file an answer to the complaint."  *H. C. Duke & Son, LLC v. Prism Mktg. Corp.*, No. 11-4006, 2011 U.S. Dist. LEXIS 126741, at *2-3 (C.D. Ill. Nov. 2, 2011); *see Oil Express Nat'l v. D'Alessandro*, 173 F.R.D. 219, 221 (N.D. Ill. 1997) ("a partial motion to dismiss allows for altering the limits of Fed. R. Civ. P. 12(a) with respect to answering those claims not addressed in Defendants' motion").

that any debt between Plaintiff and Synchrony would be subject to the cardholder's agreement, a document that Plaintiff does not reference and does not attach but governs the agreement between the parties.

Plaintiff alleges that on January 1, 2014, while Plaintiff owed a debt to Synchrony, Synchrony placed a call to Plaintiff's cellular phone, whose number ended in -5179 (the "Subject Phone").  Compl. ¶ 13.  Plaintiff alleges that she answered the January 1, 2014 call, that a Synchrony representative advised that they were attempting to collect on a Synchrony account, and that Plaintiff responded by demanding that Synchrony stop calling the Subject Phone.[2]  *See Id*. at ¶¶ 15-16. Plaintiff states that the following month, Synchrony started to call Plaintiff to collect the next overdue payment and at that time she advised she would make a payment and requested they stop calling.  *Id.* ¶¶ 20, 22.  Plaintiff alleges that Synchrony continued to call her for years.  *Id. ¶* 26.  She further alleges that these calls were made during the three days that her payment was late every month.  *Id.* ¶¶ 18-26, 28. The Complaint lacks any specific allegations that Plaintiff took any action since January 1, 2014 to notify Synchrony that she continued to receive calls after requesting that calls stop, such as telephoning Synchrony, submitting a complaint, requesting to speak to a supervisor, or notifying Synchrony in writing.

---

[2] Plaintiff references other telephone numbers without any allegations that Synchrony called those numbers, the type of telephone, the status of consent, the dates of such calls, etc.  *Compl.* ¶ 11.

Plaintiff alleges that Synchrony called her over 750 times between January 1, 2014 and the filing of the Complaint.  Compl. ¶ 57.  Plaintiff offers the bare legal conclusion, with no supporting factual allegations, that these calls were made using an "automatic telephone dialing system" ("ATDS").  *Id.* ¶ 47.

Plaintiff further alleges the calls were made at inconvenient times, "with such pattern and frequency as can reasonably be expected to harass," that undated calls contained an undisclosed pre-recorded message, that the calls were made at different times to "surveil" when she would receive such calls, and that the calls were designed to harass and intimidate Plaintiff to pay her debt, and such calls were made knowingly and with intent.  *See* Compl. at ¶¶ 12, 27, 52, 72, 95.

Plaintiff alleges that Synchrony engaged in harassing phone calls in an attempt to collect on Plaintiff's Synchrony account despite Plaintiff's request for the calls to cease.  *See generally* Compl.  Plaintiff contends this conduct violated the TCPA, the FDCPA, and the GFBPA, and that Plaintiff suffered actual damages as a result.  *Id.* at ¶ 90.

## LEGAL STANDARD

A complaint must provide "'a short and plain statement of the claim showing that [the plaintiff is] entitled to relief' . . . to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99,

2 L. Ed. 2d 80 (1957)).  Although a court must accept the factual allegations in the pleadings as true, to state a valid claim of relief a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570.  A claim has facial plausibility when the "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A complaint, however, will not suffice "if it tenders naked assertions devoid of further factual enhancement."  *Id*. (quotations and citations omitted).  The court is not required to accept legal conclusions asserted in the complaint.  *See id*. at 663-64.

To survive a motion to dismiss under Rule 12(b)(6), the complaint must offer more than "labels and conclusions," and a mere "formulaic recitation of the elements of a cause of action" will not do.  *Ashcroft* at 678 (citing *Twombly*, 550 U.S. at 555.) For this reason, a court ruling on a motion to dismiss need not accept as true the "legal conclusions" set forth in a complaint.  *Id*. at 663-64.

## **ARGUMENT**

1. **Plaintiff's TCPA Claim Based on Use of an ATDS Without Consent Should Be Dismissed Because Plaintiff Does Not Allege that Synchrony Used an ATDS Under Controlling Case Law.**

   The TCPA defines the term 'automatic telephone dialing system' as follows:
   (1) The term "automatic telephone dialing system" means equipment which has the capacity—
   (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and
   (B) to dial such numbers.

- 6 -

47 U.S.C. § 227(a)(1).  The United States Court of Appeals for the Eleventh Circuit adopted a narrow definition of the term "ATDS" in *Glasser v. Hilton Grand Vacations Co., LLC*, 948 F.3d 1301 (11th Cir. 2020).  The Eleventh Circuit joined in the narrow interpretation adopted by the Third Circuit in *Dominguez v. Yahoo, Inc.*, 894 F.3d 116 (3rd Cir. 2018) and the Seventh Circuit in *Gadelhak v. AT&T Servs., Inc.*, No. 19-1738, 2020 WL 808270 (7th Cir. Feb. 19, 2020).  Under this interpretation, to constitute an ATDS a system must: "(1) store telephone numbers using a random or sequential number generator and dial them or (2) produce such numbers using a random or sequential number generator and dial them."  *Glasser*, 914 F.3d 1301, 1306 (11th Cir. 2020).

In adopting the narrower definition of "ATDS", the Eleventh Circuit made clear that systems that call from customer databases and lists, as opposed to calling randomly or sequentially generated numbers, are not covered under the TCPA.  The Eleventh Circuit explained that its interpretation is consistent with the early interpretations of the statutory definition of ATDS:

> Contemporaneous understanding supports this interpretation as well.  Everyone seemed to accept this interpretation for the first dozen years of the statute's existence.  The Federal Communications Commission, the agency that administers the Act, shared this view after the Act's passage.  In a 1992 declaratory order, the Commission explained that certain technologies would not qualify as auto-dialers under the Act because the numbers these devices called "are not generated in a random or sequential fashion"—a baseline for all covered calls.  *In re*

- 7 -

> *Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991, 7 FCC Rcd. 8752, 8776 (1992)*. The agency did not alter its view in 1995, saying that it did not cover calls "directed to . . . specifically programmed contact numbers," only to those "randomly or sequentially generated telephone numbers." *In re TCPA Rules & Regulations, 10 FCC Rcd. 12391, 12400 (1995)*. The "random or sequential" requirement, thought the Commission, modified produce and store. The law did not cover devices that merely stored numbers and called them later. From 1991 to 2003, this perspective prevailed. The plaintiffs have not identified any court from that era that took the view that the law covered devices that merely stored numbers and called them later.

*Glasser*, 948 F.3d at 1308. Thus, the definition of ATDS excludes systems that merely store numbers to be dialed from a list. *Id*. at 1309-1310.

Here, Plaintiff alleges that Synchrony used an ATDS to call the Subject Phone. Compl. ¶¶ 15, 30, 32, 34, 36, 38, 40, 42. 44, 46, 48, 49, 51. Without any basis, Plaintiff concludes that every call made to her in the past four years was made using an ATDS which has the "capacity to store or produce numbers to be called, without human intervention, using a random or sequential number generator", mirroring the language of the statute without alleging facts. Compl. ¶¶ 49, 51. Yet it is implausible that a company seeking to collect debts (as Plaintiff alleges Synchrony to be) would use a system that randomly and sequentially generates phone numbers. Logically, companies engaged in debt collection call specific individuals, at specific numbers, about specific debts, not random individuals at random numbers. *See Glasser,* 948 F.3d at 1309 (acknowledging that predictive

dialers call from a list of consumers who showed an interest in a product or owed a debt). Indeed, Plaintiff's allegations that Synchrony called her in attempts to collect an alleged debt (*see* Compl. ¶ 13) are logically inconsistent with the proposition that Synchrony called her using a system that generated random numbers. A predictive dialer (or a telephony system operating in predictive mode) is a telephony system that places calls to telephone numbers from a list, not a system that has the capacity to randomly or sequentially generate telephone numbers. *See ACA Int'l v. Fed. Commc'ns Comm'n*, 885 F.3d 687, 694 (D.C. Cir. 2018) (noting that a predictive dialer is "equipment that can dial automatically from a given list of telephone numbers using algorithms to predict when a sales agent will be available.") (internal quotation omitted).

Consequently, Plaintiff fails to state a claim under the TCPA based on calls made to her using an ATDS. *See Gadelhak v. AT&T Servs., Inc.*, No. 19-1738, 2020 WL 808270, at *8 ("the capacity to generate random or sequential numbers is necessary to the statutory definition [of an ATDS]"). The Court should dismiss Plaintiff's TCPA claim, to the extent that Plaintiff claims Synchrony used an ATDS to call the Subject Phone after Plaintiff revoked consent to be contacted.[3]

---

[3] Plaintiff further refers in passing to calls made with a "prerecorded voice". Compl. ¶ 52. However, the Complaint is devoid of allegations identifying when such calls took place or that the purported "prerecorded voice" occurred within the statute of limitations. Allegations of call from a prerecorded voice should be dismissed for lack of specificity but also for reasons set forth in Section 2.

2.      **The TCPA Claim Fails for the Additional Reason that Plaintiff Cannot Unilaterally Withdraw Consent.**

Plaintiff's Complaint asserts that she on January 1, 2014, she revoked consent, orally and unilaterally, for Synchrony to call her.  However, consent to receive such telephone calls is a standard provision of the credit card agreement and Plaintiff cannot unilaterally change the terms of a binding contract.  As such this cause of action should be dismissed.

On May 1, 2020, the 11th Circuit handed down a decision adopting the rule of law that prohibits Plaintiff from unilaterally withdrawing consent to receive telephone calls from Synchrony.

> We, like the Second Circuit, are also unpersuaded by the argument that unilateral revocation of consent given in a legally binding agreement is permissible because it comports with the consumer-protection purposes of the TCPA.  "It was well-established at the time that Congress drafted the TCPA that consent becomes irrevocable when it is integrated into a binding contract, and we find no indication in the statute's text that Congress intended to deviate from this common law principle in its use of the word 'consent.'"  *Reyes*, 861 F.3d at 58 (citing *Neder v. United States,* 527 U.S. 1, 21, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999)).  Permitting Medley to unilaterally revoke a mutually-agreed-upon term in a contract would run counter to black-letter contract law in effect at the time Congress enacted the TCPA.  "Absent express statutory language to the contrary, we cannot conclude that Congress intended to alter the common law of contracts in this way." *Reyes*, 861 F.3d at 59 (citing *Neder,* 527 U.S. at 21–23, 119 S.Ct. 1827).

*Medley v. Dish Network, LLC.*, 8:16-cv-02534-CEH-CPT, 2020 WL 2092594 (11th Cir. May 1, 2020).

Here, Plaintiff cannot dispute that Plaintiff and Synchrony were parties to a legally binding agreement pursuant to which Plaintiff owed payments to Synchrony. Consent to such calls is a mutually agreed upon term of that contract. A party cannot unilaterally revoke consent that is consideration in a bargained-for agreement. Accordingly, Plaintiff cannot unilaterally revoke consent to receive calls from Synchrony either made with an ATDS or with a pre-recorded voice and this claim should be dismissed.

3.   **Plaintiff's FDCPA Claim Fails Because the FDCPA Does Not Apply to the Collection of One's Own Debts.**

In Count II, Plaintiff repeats her allegations that Synchrony called her, claiming that "[u]sing an illegal phone dialing system to collect a debt is an unfair or deceptive act." Compl. ¶ 88. Though the Complaint is largely silent on how Synchrony purportedly violated the FDCPA, she asserts that Synchrony "acted intentionally in violating the FDCPA." *Id.* ¶ 89. Plaintiff does not allege any of the "unfair practices" or "false or misleading representations" that are enumerated in the FDCPA. *See,* 15 U.S.C. §§ 1692e, 1692f. Even if Plaintiff set forth the factual basis for her FDCPA claim, it would still be subject to dismissal as the FDCPA does not apply to Plaintiff's scant facts.

The FDCPA regulates the collection practices of debt collectors:it applies only to debt collectors. *See Madura v. Lakebridge Condominium Ass'n Inc.*, 382 Fed. App'x. 862, 864 (11th Cir. 2010). The FDCPA defines a debt collector as:

> Any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, **debts owed or due or asserted to be owed or due another.**

15 U.S.C. § 1692a(6), *emphasis added*. As the terms "principal purpose" and "regularly" indicate, the FDCPA was designed to target independent debt collectors who collect debts "due another." It is well settled that a creditor collecting its own debt is not a debt collector for purposes of the FDCPA. *Madura*, 382 Fed. App'x. at 864.

Here, Plaintiff cannot dispute that Synchrony is Plaintiff's creditor. Synchrony therefore cannot be directly or vicariously liable under the FDCPA for conduct intended to collect debts Plaintiff owed to Synchrony. Plaintiff has not alleged, and cannot allege, that Synchrony is a "debt collector" as defined by the FDCPA. Because Synchrony is an original creditor, it cannot be liable under FDCPA; thus Plaintiff's FDCPA claim fails as a matter of law and should be dismissed.

4.   **Plaintiff's Georgia Fair Business Practices Act Claim Fails.**

Plaintiff's Count III vaguely alleges Synchrony violated the GFBPA "by use of unlawful practices and acts within the meaning of" the statute.  Compl. ¶ 93.  However, a review of the statute fails to disclose any purported unlawful practices or acts by Synchrony within the meaning of the GFBPA.  Further, the GFBPA does not apply to actions that, as Plaintiff alleges, are regulated by other bodies of law.

a.   **The GFBPA does not apply to actions otherwise regulated.**

The GFBPA was intended to apply only to the "unregulated" consumer marketplace and specifically states that it shall not apply to actions administered by rules or regulations of regulatory agency.  OCGA 10-1-396(1).  *Chancellor v. Gateway Lincoln-Mercury, Inc.,* 223 Ga. App. 38, 502, S.E.2d 799 (Ct. App. 1998) [holding that the Truth in Lending Act regulates finance charges, truth in lending and disclosures, dismissing GFBPA claim regarding an installment sales contract].

Plaintiff alleges that Synchrony violated the TCPA and the FDCPA.  Both of those Federal statutes involve comprehensive schemes regulating business conduct.  Accordingly, the actions alleged in the Complaint do not involve the unregulated consumer marketplace, thus the GFBPA does not reach them as a matter of law.  This claim should be dismissed.

b.     **The GFBPA does not apply to actions that solely impact the individual Plaintiff.**

The GFBPA "does not apply to allegedly deceptive acts or practices that have no potential for harm to the general consuming public." *Zeeman v. Black*, 156 Ga.App. 82, 273 S.E.2d 910, 914-915 (1980); *Sheppard v. Bank of Am., N.A.,* 542 Fed. Appx. 789, 793 (11th Cir. 2013) (u*npublished)* [noting that the change in interest rate on plaintiff's mortgage impacted plaintiff only].

The Complaint asserts that Synchrony contacted Plaintiff's personal cellular telephone regarding a debt she incurred for which she failed to make payments as agreed, which caused damage to Plaintiff's emotional wellbeing.  Compl. ¶¶ 92-100. The Complaint is silent as to how this affected the public at large.  However, it is evident that calls to Plaintiff personally regarding her personal debt has no effect on the general public; accordingly this Count should be dismissed.

c.     **The conduct cited by Plaintiff does not resemble the unfair or deceptive acts cited in the GFBPA.**

The GFBPA was "designed to prohibit unfair and deceptive acts and practices against consumers" including a non-exhaustive list of specified practices.  *Harris v. Liberty Cmty. Mgmt., Inc.*, 702 F.3d 1298 (11th Cir. 2012).  In *Harris*, the Court reviewed that list with regard to Harris's claim that in attempting to collect its principal's debt, the management company was abusive in threatening legal action

and turning off Harris's water for nonpayment.  "Significantly, not a single one of those specified practices comes close to resembling the actions at issue here.  Every specified practice involves defendants making misrepresentations, causing misunderstandings, using deception, or failing to provide notice when notice is required."  *Harris,* 702 F3d. at 1304.

Here, the allegations consist of calling Plaintiff with an ATDS regarding her default on a debt after she claims she withdrew consent to such calls.  Missing, as in *Harris*, are allegations that Synchrony was deceptive, made false representations, caused misunderstanding or confusion, or was in any way deceptive.  Plaintiff does not claim Synchrony made deceptive statements to trick her; rather Synchrony called inquiring when she would make payment.  Without alleging any form of deceptive behavior, Plaintiff has failed to state a GFBPA claim, so that claim should be dismissed.

5.   **Count IV Seeking Attorneys' Fees and Count V Seeking Additional Damages Based on Plaintiff's Age Necessarily Rely on the Other Inapplicable Claims and Should Be Dismissed.**

In Count IV, Plaintiff asserts entitlement to attorneys' fees asserting that Synchrony acted in bad faith by "knowingly" violating the TCPA and the FDCPA.  *See* Compl. ¶¶ 105-106.  Plaintiff claims these are intentional torts entitling her to attorneys' fees under OCGA § 13-6-11.  Plaintiff further asserts *in advance of litigation* that Synchrony has "been stubbornly litigious" *prior to* litigation, entitling

her to litigation expenses including attorneys' fees.  Compl. ¶ 109.  Plaintiff's *ad damnum* clause demands attorneys' fees under 15 U.S.C. § 1692k(a)(3), OCGA § 10-1-390, and OCGA § 10-1-850 and "bad faith attorneys' fees".  As to Count V, Plaintiff asserts that because she is over 60, the purported violation of the GFBPA entitles her to additional damages as an Unfair or Deceptive Practices Towards the Elderly ("UDPTEA").  OCGA § 10-1-850.  These claims are dependent on the other Counts, and fail as they fail.

Further, demands for attorney's fees are not a separate cause of action.  *Lamb v. Salvage Disposal of Ga.,* 244 Ga.App. 193, 196, 535 S.E.2d 258, 261 (2000) [holding that the O.C.G.A § 13-6-11 does not create an independent cause of action].  *See also, Pillitieri v. City of Flagler Beach,* 3:16-cv-1121-j-34PDB, 2017 WL 3840433 (M.D. Fla. Sept. 1, 2017); *Cook v. Campbell*, 482 F.Supp.2d 1341, 1353 (M.D. Ala. 2007).

Plaintiff's cause of action for attorney's fees is a not a viable independent cause of action and should be dismissed.  Moreover, as set forth above, Plaintiff's claims under the TCPA, FDCPA and GFBPA should be dismissed.  Accordingly, Plaintiff's claim for attorneys fees based upon the invalidity of those causes of action must necessarily result in dismissal of the Count solely seeking attorneys fees.

Plaintiff's Count V asserting a claim under the UDPTEA also fails.  The UDPTEA permits enhanced damages for a GFBPA claim when it involves the

elderly.  O.C.G.A. § 10-1-851.  A predicate act of <u>deception</u> under the GFBPA is necessary to maintain an action under the UDPTEA.  *Id; Bradley v. Univ. Sys. of Ga.*, 1:10-CV-0720, 2010 WL 1416862 (N.D. Ga. Mar. 22, 2010).  However, as argued *supra*, Plaintiff's allegations are not recoverable under the GFBPA, and she cannot seek enhanced damages due to her age.  *Sheppard,* 542 Fed. Appx. at 793. Count V should be dismissed as a result.

6.   **Plaintiff Is Estopped From Maintaining This Suit Due to the Doctrine of Laches.**

Plaintiff asserts that she withdrew consent to receive collection calls on the Subject Phone on January 1, 2014 and waited over six years to file this action until on February 18, 2020.  Plaintiff's delay in filing this lawsuit is prejudicial to Synchrony and should not be permitted.

"Laches is a defense sounding in equity that serves to bar suit by a plaintiff whose unexcused delay, if the suit were allowed, would be prejudicial to the defendant."  *Black Warrior Riverkeeper, Inc. v. U.S. Army Corps of Engineers,* 781 F.3d 1271, 1283 (11th Cir. 2015).  Defendant must demonstrate three elements: there was a delay, plaintiff has no excuse for the delay, and defendant suffered prejudice. *Coffey v. Braddy,* 834 F.3d 1184 (11th Cir. 2016).

Here, it is undisputed that Plaintiff delayed over six years in filing this lawsuit from the purported January 1, 2014 revocation of consent to the filing of this action

in 2020.  The Complaint further admits that, while Plaintiff purportedly withdrew consent on January 1, 2014 and requested no further calls, Synchrony purportedly in 2014 "kept calling until the Plaintiff paid 3 days later."  Compl. ¶ 18.  Plaintiff cannot claim she had no knowledge of these events and presents no excuse for her six year delay.

Furthermore, Synchrony is a national company with many employees and document maintenance protocols.  It is highly unlikely that a customer service representative is still employed with Synchrony six years later and that document maintenance protocols would encompass any recordings of telephone calls from January 1, 2014.  Plaintiff's six-year delay in bringing this action prejudiced Synchrony by increasing the likelihood that relevant evidence that would ordinarily be dispositive of such claims would no longer be preserved.

Moreover, by not taking timely action, Plaintiff asserts per-call damages based upon purportedly receiving 750 calls, rather than a smaller number had she taken action sooner.  Had Plaintiff truly wanted for calls to stop, surely Plaintiff would have taken action before six years passed.  Plaintiff's unnecessary delay multiplies the damages she claims she suffered and increases the expense and complexity of defending such claims.

Synchrony has been prejudiced by Plaintiff's excessive delay.  Plaintiff should not benefit from denying Synchrony its defenses, therefore this action should be dismissed based on the doctrine of laches.

7.     **Plaintiff's Claims Are Limited Due to the Expiration of the Statute of Limitations.**

Plaintiff alleges that she revoked consent for Synchrony to contact her regarding her repeated defaults in paying her debt on January 1, 2014 and that Synchrony violated various laws in the days, and years, following.  In the event the Court does not dismiss the claims on the grounds set forth above, the statute of limitations should be applied to limit the scope of litigation.

TCPA claims are subject to a four year statute of limitations from the date the cause of action accrues.  28 U.S.C. § 1658(a) (prescribing four year statute of limitations for federal claims which otherwise do not set forth a limit); *Solis v. CitiMortgage, Inc.,* 700 Fed. Appx. 965 (11th Cir. 2017).  The FDCPA has a one year statute of limitations. 15 U.S.C. § 1692k(d).  The GFPBA has a two year statute of limitations from the date the plaintiff knew or should have known of the occurrence of the alleged violation.  O.C.G.A. § 10-1-401.

While Plaintiff claims she's received over 750 calls between January 1, 2014 and 2019 claiming that she is entitled to damages assessed per call, the statute of limitations prohibits her recovery for calls that occurred prior to the statutory limits.  She should be barred from recovering for any calls prior to February 18, 2016 under

the TCPA; February 18, 2019 under the FDCPA and February 18, 2018 under the

GFPBA.  Similarly, her Counts IV and V arising under the GFPBA should be barred

by the same two year statute of limitations.

## CONCLUSION

For the reasons stated herein, Synchrony respectfully requests that this Court

dismiss Plaintiff's TCPA claim because she cannot unilaterally withdraw consent

and, to the extent it is based on an alleged violation of the prohibition against calls

to cellular telephones using an ATDS without consent; dismiss the FDCPA claim as

in applicable to Synchrony; dismiss the GFBPA claim as pre-empted by the TCPA

and FDCPA; dismiss the two remaining counts as dependent upon the other claims,

and for such other and further relief as this Court deems appropriate.

This 1st day of June, 2020.

THE GILROY FIRM

/s/ Monica K. Gilroy
Monica K. Gilroy, Esq.
Georgia Bar No. 427520
Email:Monica.Gilroy@gilroyfirm.com
Matthew F. Totten
Georgia Bar No. 798589
Email:Matthew.Totten@gilroyfirm.com
*Counsel for Defendant Synchrony Bank*

THE GILROY FIRM
3780 Mansell Road, Suite 140
Alpharetta, Georgia 30022
(678) 280-1922; (678) 280-1923 Facsimile

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 1, 2020, I electronically filed the foregoing with the Clerk of the U.S. District Court, Middle District of Georgia, Macon Division, by using the CM/ECF system, which will send notification of such filing(s) to all counsel of record listed below:

Joseph P. McClelland, III
joseph@jacksonlaws.com
Joseph P. McClelland, LLC
545 N. McDonough Street, Suite 210
Decatur, GA 30030
joseph@jacksonlaws.com

*Counsel for Plaintiff*
*DiAnn Moody*

 /s/ Monica K. Gilroy
Monica K. Gilroy, Esq.
Georgia Bar No. 427520
Email:Monica.Gilroy@gilroyfirm.com
Matthew F. Totten
Georgia Bar No. 798589
Email:Matthew.Totten@gilroyfirm.com
*Counsel for Defendant Synchrony Bank*

THE GILROY FIRM
3780 Mansell Road, Suite 140
Alpharetta, Georgia 30022
(678) 280-1922; (678) 280-1923 Facsimile