IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| DIANN L. MOODY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 5:20-cv-61 (MTT) |
| | ) |
| SYNCHRONY BANK, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## ORDER

Defendant Synchrony Bank moves to dismiss Plaintiff Diann L. Moody's complaint. For the following reasons, that motion (Doc. 3) is **GRANTED in part**.

## I. BACKGROUND

Moody alleges Synchrony began calling her to collect debts on January 1, 2014, and that she asked Synchrony to stop calling her. She alleges that over the next six years, Synchrony made hundreds[1] of calls using an automatic telephone dialing system (ATDS), that every call made to her was without her express permission, that "many of the calls" were made using a prerecorded voice, that Synchrony recorded conversations with Moody, and that Synchrony intentionally placed the calls at inconvenient times. *See generally* Doc. 1. She alleged that Synchrony's conduct violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.*, the Fair Debt Collection

---

[1] Her exact words are "Defendant made at least one hundred (750) calls the number ending in 5179 using an ATDS." Doc. 1 ¶ 48. Elsewhere she alleges that "Defendant made at least three hundred (700) calls the number ending in 5179 using an ATDS." *Id.* ¶ 46. Portions of the complaint appear to have been inattentively drafted. *See also* Doc. 1 ¶ 73 ("Defendant continued to call Plaintiff at inconvenient times that were told to Defendant to harass Plaintiff into paying a debt.").

Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, the Georgia Fair Business Practices Act ("GFBPA"), O.C.G.A. § 10-1-390 *et seq.*, "and [the] Unfair or Deceptive Practices Toward the Elderly [Act]" ("UDPTEA"), O.C.G.A. § 10-1-850.

Synchrony moved to dismiss all claims. Doc. 3. On the TCPA claim, Synchrony argued that it did not use an ATDS within the meaning of the statute. Doc. 4 at 11-14. In response, Moody withdrew the ATDS theory of her TCPA claim, acknowledging the system used to place calls to her phone is not an ATDS under Eleventh Circuit law. Doc. 9 at 3-4.

As to the FDCPA claim, Synchrony argued that although the complaint does not allege the attempted debt collection was pursuant to a contract, the Court should infer that it was and dismiss the FDCPA claim because the FDCPA does not apply to banks collecting their own debts. Doc. 4 at 16-17. That argument is based on speculation about circumstances not alleged in the complaint,[2] which is not proper at the motion to dismiss stage. However, in her response brief, Moody withdrew the FDCPA claim. Doc. 9 at 4. Moody also voluntarily dismissed Count IV of her complaint, which sought "Bad Faith Attorney Fees," and Count V, the UDPTEA claim. Docs. 9 at 9; 1 ¶¶ 104-116. Moody also acknowledged that under the relevant limitations periods, the remaining TCPA claims are limited to incidents on or after February 18, 2016, and that her GFBPA claims are limited to incidents on or after February 18, 2018. Doc. 9 at 12.

---

[2] Nor were those circumstances alleged by Synchrony. Perhaps attempting to avoid presenting evidence, Synchrony argued that "[t]hough not specifically alleged in the Complaint, it is evident by the facts set forth therein that prior to January 1, 2014, Plaintiff had entered into a debtor creditor relationship with Synchrony and fallen into default on that credit card." Doc. 4 at 8. The Court agrees that the circumstances of the complaint suggest it is likely that that was the case. But that is no basis for granting a motion to dismiss.

The remaining claims, therefore, are (1) a TCPA claim based on calls using a prerecorded voice, and (2) a GFBPA claim based on Synchrony's allegedly harassing phone calls.

## II. DISCUSSION

### A. Motion to Dismiss Standard

The Federal Rules of Civil Procedure require that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To avoid dismissal pursuant to Rule12(b)(6), a complaint must contain sufficient factual matter to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the court [can] draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing Fed. R. Civ. P. 12(b)(6)). "Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) (internal quotation marks and citations omitted).

At the motion to dismiss stage, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *FindWhat Inv'r Grp. v. FindWhat.com.*, 658 F.3d 1282, 1296 (11th Cir. 2011) (internal quotation marks and citations omitted). But "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Wiersum v. U.S. Bank, N.A.,* 785 F.3d 483, 485 (11th Cir. 2015) (internal quotation marks and citation omitted). The complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550

U.S. at 555 (internal quotation marks and citation omitted).  Where there are dispositive issues of law, a court may dismiss a claim regardless of the alleged facts.  *Patel v. Specialized Loan Servicing, LLC*, 904 F.3d 1314, 1321 (11th Cir. 2018) (citations omitted).

**B. Analysis**

    *1. The TCPA claim*

After Moody withdrew the ATDS theory, the only remaining basis of her TCPA claim is the allegation that Synchrony used prerecorded calls.  Synchrony acknowledges that the use of a prerecorded voice "can, by itself, form the basis for a TCPA claim."  Doc. 10 at 3.

However, Synchrony argues that Moody's allegation that "many of the calls at issue were placed by the Defendant using a 'prerecorded voice'" is a "bare legal conclusion" rather than "a factual allegation."  *Id*.  The Court disagrees: clearly the complaint alleges that Synchrony placed calls to Moody using a prerecorded voice.  Although that allegation does track the language of the statute, it is still a factual allegation.  Because the Court assumes that this "factual contention[] ha[s] evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery," it is an adequate allegation of a TCPA violation.  Fed. R. Civ. P. 11(b)(3).

However, Moody's claims based on those violations may nonetheless be time-barred.  Moody does not allege when the calls using a prerecorded voice took place.  Her complaint covers calls over approximately a six-year period; however, she now acknowledges that the TCPA's four-year statute of limitations applies to the TCPA

claims. It is possible that the calls using a prerecorded voice took place only between January 1, 2014 and February 17, 2016—in which case they would be time-barred. Put differently, Moody has not adequately responded to Synchrony's statute-of-limitations argument. However, the Court will allow her to amend her complaint.[3]

Synchrony also argues that Moody consented to the calls because "consent to receive such telephone calls is a standard provision of the credit card agreement and Plaintiff cannot unilaterally change the terms of a binding contract." Doc. 4 at 15. But again, Synchrony has not established there was a binding contract or pointed to a specific provision allowing it to call her about credit-card debt. Nor did Moody allege she consented, that she held a credit card, or that she entered into any other agreement with Synchrony.[4] Synchrony appears to assume that lack of consent is a pleading requirement, but it is not. Rather, prior consent is an affirmative defense. *See, e.g.*, *Murphy v. DCI Biologicals Orlando, LLC*, 797 F.3d 1302, 1305 (11th Cir. 2015) (describing consent as an affirmative defense). The burden is on Synchrony to show

---

[3] Moody requested an opportunity to amend to flesh out the claims based on prerecorded voice calls. Doc. 9 at 4. In reply, Synchrony argues amendment is improper only because it would be futile. Doc. 10 at 5-7. Amendment would be futile, Synchrony argues, because Synchrony had—or might have had—a contract with Moody that allowed Synchrony to call her. If Moody amends, Synchrony argues, it will raise that defense, and then, Synchrony argues, the Court will find the defense is meritorious and will dismiss Moody's claims. Doc. 10 at 5-7. Clearly that argument is without merit. The Court does not dismiss claims or deny motions to amend based on chains of speculation about what a defendant might or could argue at some future date.

[4] Moody did claim she revoked consent, but she was cagey in her wording: "Plaintiff expressly revoked any consent Defendant may have mistakenly believed it had for placement of telephone calls to Plaintiff's aforementioned cellular telephone . . ." Doc. 1 ¶ 67. There is nothing in the Complaint alleging Moody had contractually committed to receiving calls.
   If there is such an agreement, of course, Moody's claim may well be subject to dismissal. Moody's sole response to the Defendant's consent defense is that "Defendant has provided no contract indicating that the Plaintiff consented to receiving robocalls." Doc. 9 at 4. Obviously, if Synchrony produces such a contract, that argument will be insufficient.

Moody consented to receiving the phone calls, and Synchrony has failed to carry that burden.  Accordingly, the Court cannot find that Moody consented to receive the calls.

   *2. The GFBPA claim*

Synchrony argues the GFBPA claim should be dismissed for three reasons: (a) the GFBPA does not apply to robocalls because they are separately regulated; (b) Synchrony's alleged practices do not have potential to harm the public interest, and (c) Synchrony's conduct, as alleged by the complaint, does not violate the GFBPA.  Doc. 4 at 18-20.

      *a. Regulation*

The Defendant first argues that the TCPA regulates telephone calls and the FDCPA regulates debt collection, so the GFBPA "does not reach them as a matter of law."  Doc. 4 at 18.  As to the FDCPA, that argument is plainly without merit: to the contrary, it is well established that a violation of the FDCPA also violates the GFBPA. *1st Nationwide Collection Agency, Inc. v. Werner*, 288 Ga. App. 457, 459, 654 S.E.2d 428, 431 (Ga. App. 2007); *see Gilmore v. Account Mgmt., Inc.*, 357 F. App'x 218, 220 (11th Cir. 2009) ("*Werner* also supports the conclusion that Account Management necessarily violated Georgia's FBPA when it violated the FDCPA."); *Shurley v. McNeil & Meyers Asset Mgmt. Grp. LLC*, 2018 WL 4053326, at *3 (M.D. Ga. Aug. 24, 2018) ("a violation of the FDCPA is also a violation of the GFBPA") (citing cases); *Kuria v. Palisades Acquisition XVI, LLC*, 752 F. Supp. 2d 1293, 1300 n.6 (N.D. Ga. 2010) ("Violation of the FDCPA is sufficient to create a violation of the GFBPA").  If Synchrony means to argue that all of those cases were wrongly decided, and that any conduct

subject to the FDCPA is automatically immune to GFBPA liability, then Synchrony must find authority to support that argument.

The answer to Synchrony's TCPA preemption argument is no less clear. Synchrony argues that the GFBPA "specifically states that it shall not apply to actions administered by rules or regulations of regulatory agency." [sic].  Doc. 4 at 18 (citing O.C.G.A. § 10-1-396(1)).  To state the principle more precisely:

> Nothing in this part shall apply to:
>
> (1) *Actions or transactions specifically authorized under* laws administered by or rules and regulations promulgated by any regulatory agency of this state or the United States;

O.C.G.A. § 10-1-396(1) (emphasis added).  That is, the statute does not reach conduct authorized by other state or federal laws.  But nowhere does Synchrony argue that their conduct is authorized "under laws administered by or rules and regulations promulgated by any regulatory agency of this state or the United States[.]"  Apparently, Synchrony interprets that statute to embody a principle similar to "field" preemption: if there is a sufficiently comprehensive regulatory scheme, the GFBPA does not apply.  Synchrony's only support for this argument is *Chancellor v. Gateway Lincoln-Mercury, Inc.*, where the court found that a claim based on financing, which was regulated by the federal Truth in Lending Act ("TILA"), fell outside the reach of the GFBPA.[5]  233 Ga. App. 38, 502 S.E. 2d 799 (Ga. App. 1998).  However, TILA expressly preempts inconsistent state laws, and the TCPA does not.  Further, Synchrony fails to allege there was any

---

[5] Synchrony actually cites to "223 Ga. App. 38," but the correct citation is "233 Ga. App. 38." Doc. 4 at 18. The Court assumes that was a typo.  Synchrony did not include a pincite indicating which portion of the decision supports its argument.  The Court assumes the portion of *Chancellor* that supports Synchrony's position is found at 233 Ga. App. 38, 45, 502 S.E. 2d 799, 805.

comprehensive regulatory scheme governing the transactions at issue in this case—whatever those transactions are.[6]

### b. Whether the alleged practices harm the public interest

Next, Synchrony argues simply that "it is evident that calls to Plaintiff personally regarding her personal debt has no effect on the general public."  Doc. 4 at 19.  However, it is not "evident" to the Court.  To the contrary, the alleged practice of making harassing phone calls to collect debts could harm the general consuming public.  The cases Synchrony cites concern one-time transactions involving isolated acts by the defendants.  *See Sheppard v. Bank of Am., NA*, 542 F. App'x 789, 793 (11th Cir. 2013) (an allegedly deceptive act in unilaterally altering the interest rate on a loan); *Zeeman v. Black*, 156 Ga. App. 82, 273 S.E.2d 910 (Ga. App. 1980) (a misrepresentation about the size of a lot in a private real-estate transaction).  However, the bank debt collection practices alleged here are far more likely to affect the consuming public.  And, as Moody argues, "courts have continuously held 'collecting a debt incurred during a consumer transaction could harm the general consuming public if conducted via deceptive acts or practices and clearly falls within the parameters of the FBPA.'"  *Beeler v. Ditech Fin., LLC*, 2016 WL 4136513, at *2 (M.D. Ga. Aug. 1, 2016) (quoting *Gilmore v. Account Mgmt., Inc.*, 357 Fed. Appx. 218, 220 (11th Cir. 2009)).

### c. Whether the conduct alleged violates the GFBPA

Finally, Synchrony argues that the acts alleged here—harassing phone calls—are not unfair or deceptive acts within the meaning of the GFBPA.  Doc. 4 at 14-15.

---

[6] Presumably, credit-card debt.  But again, for whatever reason, Synchrony did not expressly argue that.  Further, the cases Synchrony cites apply to certain markets or transactions, such as financing, rather than specific practices or conduct, such as making telephone calls.

The examples of unfair or deceptive acts noted in the GFBPA all involve "defendants making misrepresentations, causing misunderstandings, using deception, or failing to provide notice when notice is required."  *Harris v. Liberty Cmty. Mgmt., Inc.*, 702 F.3d 1298, 1304 (11th Cir. 2012); O.C.G.A. § 10-1-393.  As Synchrony argues, Moody makes no allegation of any deceptive act or behavior.

In response, Moody argues that the FDCPA prohibits repeatedly calling a debtor with intent to harass.  Doc. 9 at 8-9.  Moody does not explain how the FDCPA argument advances her position as to what the GFBPA prohibits.

The scope of the FDCPA's coverage can only be relevant if Moody is relying on the unstated premise that violations of the FDCPA are necessarily violations of the GFBPA, as discussed above.  The argument, then, would run like this: (i) the FDCPA prohibits Synchrony's conduct, (ii) violations of the FDCPA are necessarily violations of the GFBPA, so (iii) Synchrony's conduct violates the GFBPA.

The problem with that argument is that Moody has failed to state a claim for an FDCPA violation.[7]  Specifically, she failed to allege Synchrony is a "debt collector" within the meaning of the FDCPA.  Moody alleges Synchrony attempted to collect a debt from her, but she does not allege that Synchrony "uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts" or that it "regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C. § 1602a(6).

---

[7] Moody's decision to withdraw her FDCPA claim provides some indication that she realizes that.

Accordingly, Moody's FDCPA argument fails.  Moreover, the Court cannot find any example of a court finding that placing harassing telephone calls violates the GFBPA.  The conduct alleged here does not resemble the examples of unfair or deceptive conduct listed in the statute; does not involve Synchrony "making misrepresentations, causing misunderstandings, using deception, or failing to provide notice when notice is required," *Harris*, 702 F.3d at 1304; and does not violate the FDCPA.  Moody fails to state a claim under the GFBPA.

*3. Laches*

Synchrony also argues the complaint is barred by the doctrine of laches.  Doc. 4 at 22-25.  To establish this defense, Synchrony must prove that Moody delayed in filing the complaint, that the delay was not excusable, and that it caused undue prejudice to Synchrony.  *Coffey v. Braddy*, 834 F.3d 1184, 1189 (11th Cir. 2016).

Synchrony argues that because the calls had been going for approximately six years, Moody did delay in filing this lawsuit.  To the extent Moody bases her claims on alleged occurrences from 2014, the Court agrees.  However, Moody also seeks relief for more recent alleged telephone calls, and she has not unduly delayed as to those claims.

Second, Synchrony argues it *might* be prejudiced for two reasons: first, because relevant evidence may be difficult to access, and second, because Moody asserts per-call damages over the span of her six-year delay in filing the lawsuit.  As to damages, of course, Moody has now agreed that she cannot recover for calls made beyond the relevant statute of limitations, so her delay has not "multiplied the damages she suffered[.]"  Doc. 4 at 23.  As to Synchrony's claim that it *might* be prejudiced by

unavailability of evidence, a speculative possibility of prejudice is not an element of a laches defense.[8]  Synchrony has not showed prejudice, nor has it showed delay with respect to the claims not otherwise time-barred.

## IV. CONCLUSION

For the reasons noted above, Synchrony's motion to dismiss (Doc. 3) is **GRANTED in part**.  It is **GRANTED** as to the TCPA claims based on use of an ATDS, the FDCPA claims, the GFBPA claims, the UDPTEA claims, the claim for bad-faith attorney fees, and all claims based on alleged conduct outside the relevant statutes' limitations periods.  Those claims are **DISMISSED** without prejudice.  The only remaining claims in this lawsuit are under the TCPA for calls using a prerecorded voice within four years of the date of filing of the complaint.

However, because the complaint does not clearly allege that Synchrony placed calls using a prerecorded voice within the four-year limitations period, it fails to state a claim.  The Court will defer ruling on Synchrony's motion to dismiss the remaining TCPA claims until Moody has had an opportunity to move to amend her complaint.[9]  In that proposed amended complaint, she may also state the basis, if any, for her putative GFBPA claim.  If she wishes to amend, she should file a motion to amend and a proposed amended complaint no later than October 13, 2020.  Otherwise, the complaint

---

[8] Synchrony makes no definite statements about how it would be prejudiced, but coyly states that "the Court may fairly infer that Synchrony has some sort of document retention policy, and may fairly infer that it does not contemplate plaintiffs asserting claims outside the statute of limitations . . . it stands to reason that key exculpatory evidence . . . could well have been lost due to that delay."  Doc. 10 at 10.  But again, "fair[] infer[ences]" and possibilities that "stand[] to reason" are not grounds for dismissing a complaint.

[9] A statute of limitations defense is an affirmative defense.  But under the circumstances here, it is better to see if Moody can allege that the calls took place within the four years before she filed her complaint rather than to parse the respective burdens to establish or defeat an affirmative defense on a motion to dismiss.

will be dismissed for failure to state a claim.  If Moody moves to amend, Synchrony may supplement its motion to dismiss, and Moody may respond.

As a final note, Synchrony requests the Court to order that Moody's complaint specifically allege (1) whether Moody and Synchrony were in a debtor-creditor relationship and (2) whether the calls Synchrony allegedly placed to Moody were for the purpose of collecting debt owed to Synchrony.  Doc. 10 at 5.  Synchrony's frustration over the form of the complaint is perhaps understandable.  But Moody is free to draft her proposed amended complaint any way she wants so long as it complies with the Federal Rules of Civil Procedure and any other applicable rules.  If the amended complaint does not comply with those rules, Synchrony may request appropriate relief.  Similarly, if the action is barred by an affirmative defense, Synchrony may raise that defense.

**SO ORDERED**, this 29th day of September, 2020.

S/ Marc T. Treadwell
MARC T. TREADWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
