

**User Name:** Paul Gibson, III
**Date and Time:** Friday, November 20, 2020 3:03:00 PM EST
**Job Number:** 130552099

## Document (1)

1. *Creasy v. Charter Communs., Inc., 2020 U.S. Dist. LEXIS 177798*
   **Client/Matter:** -None-
   **Search Terms:** Creasy v. Charter Communs., Inc., 2020 U.S. Dist. LEXIS 177798
   **Search Type:** Natural Language
   **Narrowed by:**

   | Content Type | Narrowed by |
   | --- | --- |
   | Cases | -None- |

 Cited
As of: November 20, 2020 8:03 PM Z

# Creasy v. Charter Communs., Inc.

United States District Court for the Eastern District of Louisiana

September 28, 2020, Decided; September 28, 2020, Filed

CIVIL ACTION NO. 20-1199 SECTION "F"

**Reporter**
2020 U.S. Dist. LEXIS 177798 *

STACY CREASY, ET AL. v. CHARTER COMMUNICATIONS, INC.

## Core Terms

robocalls, government-debt, violations, plaintiffs', communications, severed, telephone, unconstitutional law, plurality opinion, motion to dismiss, text message, ban, lack subject matter jurisdiction, subject matter jurisdiction, federal court, content-based, adjudicate, invalid, reasons, Mobile

## Case Summary

### Overview

HOLDINGS: [1]-The court dismissed the majority of the class plaintiffs' claims alleging that defendant repeatedly violated *47 U.S.C.S. § 227(b)(1)(A)(iii)* of the Telephone Consumer Protection Act of 1991 for lack of subject matter jurisdiction because the entirety of the version of *§ 227(b)(1)(A)(iii)* that existed before the Supreme Court severed the government-debt exception was void, and the unconstitutional amended version of *§ 227(b)(1)(A)(iii)* was what applied to defendant at the time of all but one of the challenged communications at issue; [2]-The court granted a stay pending the U.S. Supreme Court's decision in Facebook, Inc. v. Duguid because the decision would illuminate an unsettled and key area of the law, and a stay would promote judicial economy, conserve party resources, and increase the likelihood of a just and correct outcome.

### Outcome
Motion to dismiss granted in part and denied in part; motion to stay granted.

## LexisNexis® Headnotes

Civil Procedure > ... > Responses > Defenses, Demurrers & Objections > Motions to Dismiss

Evidence > Burdens of Proof > Allocation

### *HN1*[ ] Defenses, Demurrers & Objections, Motions to Dismiss

Motions filed under *Fed. R. Civ. P. 12(b)(1)* allow a party to challenge a court's subject matter jurisdiction. As a court of limited jurisdiction, a federal court must affirmatively ascertain subject-matter jurisdiction before adjudicating a suit. A district court should dismiss where it appears certain that the plaintiff cannot prove a plausible set of facts that establish subject-matter jurisdiction. A court may find that plausible set of facts by considering (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. The party asserting jurisdiction bears the burden of proof.

Constitutional Law > ... > Fundamental

Paul Gibson, III

Freedoms > Freedom of Speech > Scope

### HN2[↓] Fundamental Freedoms, Freedom of Speech

It is a timeless principle that an unconstitutional law is void, and is as no law. That principle colors many doctrines, but it suggests that-in the vast run of scenarios-a speaker should not be punished for engaging in speech that was restricted in an unconstitutional fashion. It also supports the general rule that once a statute has been declared unconstitutional, the federal courts thereafter have no jurisdiction over alleged violations (since there is no valid law of the United States' to enforce).

Governments > Courts > Judicial Precedent

### HN3[↓] Courts, Judicial Precedent

Without exception, federal district courts are bound by Supreme Court precedent. Occasionally, however, a fragmented Court decides a case, but no single rationale explaining the result enjoys the assent of five Justices. In such scenarios, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds. As a result, when the Justices fail to converge on a single majority rationale for a decision, the only precedent that comes of such a decision is the position adopted by the narrowest concurrence.

Governments > Courts > Judicial Precedent > Dicta

Governments > Courts > Judicial Precedent

### HN4[↓] Judicial Precedent, Dicta

Obiter dictum is defined as a judicial comment made while delivering a judicial opinion, but one that is unnecessary to the decision in the case and therefore not precedential (although it may be considered persuasive). Where general expressions in an opinion go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit when the very point is presented for decision.

Constitutional Law > ... > Fundamental Freedoms > Freedom of Speech > Political Speech

Constitutional Law > ... > Fundamental Freedoms > Freedom of Speech > Scope

### HN5[↓] Freedom of Speech, Political Speech

The 2015 amendment adding the government-debt exception to *47 U.S.C.S. § 227(b)(1)(A)(iii)* converted a theretofore neutral speech restriction into an invalid content-discriminatory one. Indeed, when divorced from the exception enabling one category of speech above all others, *§ 227(b)(1)(A)(iii)* was (and now again is) a valid time-place-manner restriction on speech. Only by appending the government-debt exception to *§ 227(b)(1)(A)(iii)*'s general robocall ban did Congress begin to impermissibly favor debt-collection speech over political and other speech.

Constitutional Law > ... > Fundamental Freedoms > Freedom of Speech > Scope

### HN6[↓] Fundamental Freedoms, Freedom of Speech

A restriction cannot possibly be content-based if it does not treat different categories of content differently; an exception cannot be unconstitutionally discriminatory without reference to the broader rule in which it appears.

Civil Procedure > Appeals > Reviewability of Lower Court Decisions > Preservation for Review

### HN7[↓] Reviewability of Lower Court Decisions, Preservation for Review

A remedy is only necessary where there has first been a wrong.

Civil Procedure > ... > Defenses, Demurrers & Objections > Motions to Dismiss > Failure to State Claim

Civil Procedure > ... > Pleadings > Complaints > Requirements for Complaint

### HN8[↓] Motions to Dismiss, Failure to State Claim

*Fed. R. Civ. P. 12(b)(6)* allows a party to move for dismissal of a complaint that fails to state a claim upon

which relief can be granted. To survive a motion to dismiss under *Rule 12(b)(6)*, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. To demonstrate a facially plausible basis for relief, a plaintiff must plead facts which allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. In determining whether a plaintiff has met this burden, a court must accept all well-pleaded facts as true and view all facts in the light most favorable to the plaintiff, but must not accord an assumption of truth to conclusory allegations and threadbare assertions. The foregoing presumptions are not to be applied mindlessly, however. Thus, in considering a motion to dismiss, the court may review any documents attached to or incorporated into the plaintiff's complaint by reference. In addition, the court may judicially notice matters of public record and other facts not subject to reasonable dispute.

Antitrust & Trade Law > Consumer Protection > Telemarketing

Business & Corporate Law > ... > Establishment > Elements > Application of Agency Law Principles

Business & Corporate Compliance > ... > Communications Law > Federal Acts > Telephone Consumer Protection Act

**HN9**[ ] **Consumer Protection, Telemarketing**

Under federal common-law principles of agency, there is vicarious liability for Telephone Consumer Protection Act violations.

Antitrust & Trade Law > Consumer Protection > Telemarketing

Business & Corporate Compliance > ... > Communications Law > Federal Acts > Telephone Consumer Protection Act

**HN10**[ ] **Consumer Protection, Telemarketing**

As interpreted by the Federal Communications Commission, the Telephone Consumer Protection Act robocall restriction bars both automated voice calls and automated text messages.

Governments > Courts > Authority to Adjudicate

**HN11**[ ] **Courts, Authority to Adjudicate**

If a court can readily determine that it lacks jurisdiction over the cause or the defendant, the proper course is to dismiss on that ground.

Civil Procedure > Judgments > Entry of Judgments > Stays of Judgments

Governments > Courts > Authority to Adjudicate

**HN12**[ ] **Entry of Judgments, Stays of Judgments**

The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance.

Civil Procedure > Judgments > Entry of Judgments > Stays of Judgments

Evidence > Burdens of Proof > Allocation

**HN13**[ ] **Entry of Judgments, Stays of Judgments**

The proponent of a stay bears the burden of establishing its need.

**Counsel:** [*1] For Stacy Creasy, on behalf of herself and others similarly situated, Tiffanie Hogans, Plaintiffs: Katherine Zabetti Crouch, LEAD ATTORNEY, Crouch Law, LLC, New Orleans, LA; Aaron David Radbil, PRO HAC VICE, Greenwald Davidson Radbil PLLC, Austin, TX.

For Charter Communications, Inc., doing business as, Spectrum, Defendant: David Edmund Redmann, Jr., LEAD ATTORNEY, Bradley, Murchison, Kelly & Shea, LLC (New Orleans), New Orleans, LA; Paul A. Grammatico, PRO HAC VICE, Kabat Chapman &

Ozmer LLP, Los Angeles, CA; Ryan Watstein, Kabat Chapman & Ozmer LLP, Atlanta, GA.

**Judges:** MARTIN L. C. FELDMAN, UNITED STATES DISTRICT JUDGE.

**Opinion by:** MARTIN L. C. FELDMAN

# Opinion

ORDER AND REASONS

Before the Court are a pair of related motions brought by the defendant: a motion to dismiss under *Federal Rules of Civil Procedure 12(b)(1)*, *12(b)(2)*, and *12(b)(6)*, and in the alternative, a motion to stay pending the Supreme Court's forthcoming decision in Facebook, Inc. v. Duguid, No. 19-511. For the reasons that follow, the motion to dismiss is GRANTED IN PART and DENIED IN PART, and the motion to stay is GRANTED.

**Background**

In this putative class action, the plaintiffs accuse the defendant Charter Communications, Inc. of repeatedly violating *§ 227(b)(1)(A)(iii)* of the *Telephone Consumer Protection Act of 1991* [*2] (TCPA), which prohibits almost all robocalls to cell phones. See *47 U.S.C. § 227(b)(1)(A)(iii)*. In 2015, Congress amended that provision's general robocall restriction to permit robocalls made to collect debts owed to or guaranteed by the federal government. That "government-debt exception" was short-lived. On July 6, 2020, the Supreme Court struck it down as an unconstitutional content-based restriction on speech and severed it from the rest of the statute. See *Barr v. Am. Ass'n of Political Consultants (AAPC), 140 S. Ct. 2335, 207 L. Ed. 2d 784 (2020)*.

At primary issue here is that decision's effect on this Court's subject matter jurisdiction over this case. In its motion to dismiss, Charter contends that the Supreme Court's fractured decision[1] in AAPC amounts to an adjudication that the entirety of *§ 227(b)(1)(A)(iii)* was unconstitutional from the moment Congress enacted the offending government-debt exception to the moment the Court severed that exception to preserve the rest of the law in AAPC. Extending that premise to its natural conclusion, Charter argues that its alleged violations of an unconstitutional law are not enforceable in federal court.

The plaintiffs argue just the opposite: namely, that by severing the new-fangled government-debt [*3] exception to *preserve* the general ban as a going concern, the Court *confirmed* that *§ 227(b)(1)(A)(iii)* was constitutional all along. Thus, the plaintiffs suggest, Charter's conception of AAPC is fundamentally flawed, and as a result, its argument for dismissal under *Rule 12(b)(1)* is "just plain wrong."

What, then, does AAPC have to say of the matter? Unfortunately for all involved, precious little. In the few lines of nonbinding dicta shedding any light on the issue, the Court offered a pair of squarely contradictory answers. The three-Justice plurality opinion authored by Justice Kavanaugh concluded that while "no one should be penalized or held liable for making robocalls to collect government debt" as a result of the Court's

---

[1] Complicating matters immensely is the Court's inability to reach a clear majority decision in AAPC. Justice Kavanaugh announced the judgment of the Court in a plurality opinion which Chief Justice Roberts and Justice Alito joined in whole, and which Justice Thomas joined in part. *AAPC, 140 S. Ct. at 2343-56*. Justice Sotomayor concurred in the judgment. *Id. at 2356-57*. Justice Breyer, joined by Justices Ginsburg and Kagan, concurred in the judgment with respect to severability, but dissented as to the plurality's application of strict scrutiny to *§ 227(b)(1)(A)(iii)*'s content-based distinction. *Id. at 2357-63*. And Justice Gorsuch issued a final opinion, in which he concurred in the judgment in part and dissented on yet other grounds, and in which Justice Thomas joined in part. *Id. at 2363-67*.

The Court's failure to unite behind a sufficiently agreeable rationale does a disservice to litigants and lower courts. See generally Ryan C. Williams, *Questioning* Marks: *Plurality Decisions and Precedential Constraint*, *69 STAN. L. REV. 795 (2017)* (observing the confusion that commonly results from fractured plurality decisions like AAPC and proposing a renewed approach for drawing doctrinal significance from such decisions). Here, it has led the parties to wildly dissimilar understandings of AAPC's legal effect - all in the utmost good faith and preparation. In the future, it may engender a circuit split which confronts the Court anew.

invalidation of the exception that purported to authorize such robocalls, the Court's decision would not "negate the liability of parties who made robocalls covered by the robocall restriction" during the timeframe in which the exception remained operative. *Id. at 2355 n.12*. Justice Gorsuch (joined by Justice Thomas) disagreed. In his view, by "shield[ing] *only* government-debt collection callers from past liability under an admittedly unconstitutional law," the plurality "[wound] up endorsing the very same **[*4]** kind of content discrimination [it said it was] seeking to eliminate." *Id. at 2366*.

This, of course, places the Court in an uncomfortable position. (And to their credit, the parties make much of this decisive distinction.) In any event, confronted with a genuine issue of first impression, and with little more to guide it than passing Supreme Court dicta of no precedential force,[2] the Court concludes that Justice Gorsuch's is the better argument as a matter of law and logic. Congress's 2015 enactment of the government-debt exception rendered *§ 227(b)(1)(A)(iii)* an unconstitutional content-based restriction on speech. In the years *preceding* Congress's addition of the exception, *§ 227(b)(1)(A)(iii)* did not discriminate on the content of robocalls, and was, as the Supreme Court has observed, a constitutional time-place-manner restriction on speech. Likewise, now that AAPC has done away with the offending exception, *§ 227(b)(1)(A)(iii)* figures to remain good law in the years to come. However, in the years in which *§ 227(b)(1)(A)(iii)* permitted robocalls of one category of content (government-debt collection) while prohibiting robocalls of all other categories of content, the *entirety* of the provision was, indeed, unconstitutional.

That fact deprives the Court of jurisdiction **[*5]** over much of this action.

I.

In the operative complaint, the plaintiffs allege that Charter violated *§ 227(b)(1)(A)(iii)* at least 130 times by transmitting auto-dialed calls and texts to the plaintiffs without consent to do so. Importantly for present purposes, all but one of those violations is alleged to have occurred during the time period in which the government-debt exception remained operative within *§ 227(b)(1)(A)(iii)*. The lone improper communication alleged to have occurred *after* the Supreme Court's July 6, 2020 decision in AAPC is a July 11, 2020 text message to plaintiff Stacy Creasy. See Am. Compl. ¶ 40.

With respect to each of the pre-AAPC communications, Charter asserts that the Court lacks subject matter jurisdiction to adjudicate the legality of such communications because federal courts lack authority to enforce violations of unconstitutional laws. With respect to the July 11, 2020 text message to Creasy, Charter seeks dismissal on two independent grounds: first, it asserts that the Court lacks subject matter jurisdiction because the text is not traceable to Charter (*Fed. R. Civ. P. 12(b)(1)*), and second, it maintains that even if the Court does have jurisdiction to adjudicate the plaintiffs' claim with respect to that text, the **[*6]** plaintiffs nevertheless fail to state a claim upon which relief can be granted (*Fed. R. Civ. P. 12(b)(6)*).

As an alternative ground for dismissal of plaintiff Tiffanie Hogans' claims, Charter contends that the Court cannot assert personal jurisdiction over it because Charter is not subject to general jurisdiction in Louisiana and because specific jurisdiction is improper since Hogans' claims do not arise from Charter's contacts with Louisiana.

The Court addresses each of these arguments in turn.

A.

Charter first argues that the Court lacks subject matter jurisdiction to adjudicate any violations of *§ 227(b)(1)(A)(iii)* that the plaintiffs allege to have occurred between Congress's enactment of the government-debt exception and the Supreme Court's severance of that exception in AAPC.[3] As explained below, Charter is correct.

1. Applicable Legal Standards

*HN1*[↑] Motions filed under *Rule 12(b)(1) of the Federal Rules of Civil Procedure* allow a party to challenge a court's subject matter jurisdiction. "As a court of limited jurisdiction, a federal court must affirmatively ascertain subject-matter jurisdiction before adjudicating a suit. A district court should dismiss where it appears certain that the plaintiff cannot prove a plausible set of facts that establish subject-matter jurisdiction." *Bank of La. v. FDIC, 919 F.3d 916, 922 (5th Cir. 2019)* **[*7]** (quoting *Venable v. La. Workers' Comp. Corp., 740 F.3d 937, 941 (5th Cir. 2013)* (internal quotation marks omitted)). "A court may find that plausible set of facts by

---

[2] See infra note 4.

[3] As noted above, that time period covers all but one of the allegedly illegal communications at issue in this case.

considering '(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.'" Id. (quoting Spotts v. United States, 613 F.3d 559, 566 (5th Cir. 2010)). "The party asserting jurisdiction bears the burden of proof." Id. (citing Griener v. United States, 900 F.3d 700, 703 (5th Cir. 2018)).

HN2[↑] Of particular significance here is the timeless principle that "[a]n unconstitutional law is void, and is as no law." Ex Parte Siebold, 100 U.S. 371, 376, 25 L. Ed. 717 (1879); id. ("An offence created by [an unconstitutional law] is not a crime."); see also Reynoldsville Casket Co. v. Hyde, 514 U.S. 749, 760, 115 S. Ct. 1745, 131 L. Ed. 2d 820 (1995) (Scalia, J., concurring) ("[W]hat a court does with regard to an unconstitutional law is simply to *ignore* it. It decides the case '*disregarding the [unconstitutional] law*,' because a law repugnant to the Constitution 'is void, and is as no law.'" (second alteration in original) (citation omitted) (first quoting Marbury v. Madison, 5 U.S. (1 Cranch) 137, 178, 2 L. Ed. 60 (1803); then quoting Siebold, 100 U.S. at 376)). That principle colors many doctrines, but as relevant here, it suggests that - in the vast run of scenarios - a speaker should not be punished for engaging in speech that was restricted in an unconstitutional fashion. Cf. Grayned v. City of Rockford, 408 U.S. 104, 107 n.2, 92 S. Ct. 2294, 33 L. Ed. 2d 222 (1972) (holding, also with regard to an invalid time-place-manner restriction, that determining the speaker's fate required assessing "the facial constitutionality of the [restriction] in effect" at the time of the speech at issue). It also supports the general rule that "once a statute has been declared unconstitutional, the federal courts thereafter have no jurisdiction over alleged violations (since there is no valid 'law of the [*8] United States' to enforce)." United States v. Baucum, 80 F.3d 539, 541-42, 317 U.S. App. D.C. 63 (D.C. Cir. 1996) (per curiam).

2. Precedent, Plurality Opinions, and AAPC

HN3[↑] Without exception, federal district courts are bound by Supreme Court precedent. See, e.g., Amy Coney Barrett, *Precedent and Jurisprudential Disagreement*, 91 TEX. L. REV. 1711, 1712 (2013) (observing that "vertical stare decisis, a court's obligation to follow the precedent of a superior court, . . . is an inflexible rule that admits of no exception" (footnote omitted)). Occasionally, however, "a fragmented Court decides a case," but "no single rationale explaining the result enjoys the assent of five Justices." Marks v. United States, 430 U.S. 188, 193, 97 S. Ct. 990, 51 L. Ed. 2d 260 (1977). In such scenarios, "the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds." Id. (quoting Gregg v. Georgia, 428 U.S. 153, 169 n.15, 96 S. Ct. 2909, 49 L. Ed. 2d 859 (1976) (plurality opinion)). As a result, "when the Justices fail to converge on a single majority rationale for a decision," the only precedent that comes of such a decision is the position adopted by the narrowest concurrence. See Williams, supra note 1, at 798.

Cognizant of this rule, the plurality in AAPC spelled out the technical holdings of the Court in explicit terms: (1) "Six Members of the Court . . . conclude that Congress has impermissibly favored debt-collection speech over political [*9] and other speech, in violation of the First Amendment," and (2) "[S]even members of the Court conclude that the entire 1991 robocall restriction should not be invalidated, but rather that the 2015 government-debt exception must be invalidated and severed from the remainder of the statute." AAPC, 140 S. Ct. at 2343 (plurality opinion). That much is binding on all other courts.

Nevertheless, although it is not binding on this Court, the AAPC plurality's footnoted statement that the Court's decision "does not negate the liability of parties who made robocalls covered by the robocall restriction [during the relevant timeframe]" is extremely persuasive authority.[4] As such, the Court has paid it extensive consideration - while also observing the equally important facts that Justices Gorsuch and Thomas seemed to disagree, and that the remaining four Justices declined to weigh in on the issue. With that in mind, on full consideration of the issue - as presented and refined by the adversarially tested motion at hand -

---

[4] This footnote is merely persuasive, as opposed to mandatory, because it appears in an opinion commanding the votes of only three Justices, and because, as Charter astutely observes, it constitutes mere "obiter dictum." HN4[↑] "Obiter dictum" is defined as "[a] judicial comment made while delivering a judicial opinion, but one that is unnecessary to the decision in the case and therefore not precedential (although it may be considered persuasive)." *Obiter dictum*, BLACK'S LAW DICTIONARY (10th ed. 2014). As Chief Justice Marshall remarked in Cohens v. Virginia, where "general expressions" in an opinion "go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit when the very point is presented for decision." 19 U.S. (6 Wheat.) 264, 399, 5 L. Ed. 257 (1821).

the Court proceeds to the merits.

3. <u>Subject Matter Jurisdiction over Pre-AAPC Violations</u>

As Charter contends, the Court indeed lacks subject matter jurisdiction over **[*10]** each of the supposed *§ 227(b)(1)(A)(iii)* violations the plaintiffs allege to have occurred before the Supreme Court restored the constitutional muster of *§ 227(b)(1)(A)(iii)* by severing the government-debt exception in <u>AAPC</u>. As a majority of the Court held in <u>AAPC</u>, *HN5*[↑] the 2015 amendment adding the government-debt exception to *§ 227(b)(1)(A)(iii)* converted a theretofore neutral speech restriction into an invalid content-discriminatory one. Indeed, when divorced from the exception enabling one category of speech above all others, *§ 227(b)(1)(A)(iii)* was (and now again *is*) a valid time-place-manner restriction on speech. Only by appending the government-debt exception to *§ 227(b)(1)(A)(iii)*'s general robocall ban did Congress begin to "impermissibly favor[] debt-collection speech over political and other speech." <u>Id.</u> (stating the conclusion of six Justices).

While that holding affirmatively binds this Court as one of just two holdings to command the votes of a majority of the Justices in <u>AAPC</u>, it is also inescapable as a logical matter. Indeed, while the plaintiffs argue that the Court's severance of the *exception* has no bearing on the constitutionality of the *rule*, the exception and the rule are in fact inextricably intertwined for the purposes of any reasonable analysis. *HN6*[↑] Simply put, **[*11]** a restriction cannot possibly be content-based if it does not treat different categories of content differently; an exception cannot be unconstitutionally discriminatory without reference to the broader rule in which it appears. A review of the statutory text before and after the addition of the government-debt exception confirms as much.

Prior to the exception's enactment in 2015 (and now again, post-severance), *§ 227(b)(1)(A)(iii)* read(s) as follows: It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—
(A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecord voice . . .
(iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call;

This neutral version of *§ 227(b)(1)(A)(iii)* did not apply when Charter transmitted all but one of the automated communications alleged here. Instead, the following version of *§ 227(b)(1)(A)(iii)* applied:

It shall be **[*12]** unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—
(A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecord voice . . .

(iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call, *unless such call is made solely to collect a debt owed to or guaranteed by the United States*;

*47 U.S.C. § 227(b)(1)(A)(iii)* (emphasis added).

Viewing these provisions side-by-side shows how Congress's addition of a single exception could fundamentally alter the *entire* provision. Without the exception, *§ 227(b)(1)(A)(iii)* bans the gamut of robocalls with no regard to content. With the exception, it allows robocalls of one category, while banning all others. This distinction is plain, and it drove the binding result in <u>AAPC</u>. See *AAPC, 140 S. Ct. at 2346* (plurality opinion) ("*Section 227(b)(1)(A)(iii)* generally bars robocalls to cell phones. Since the 2015 amendment, the law has exempted robocalls to collect government **[*13]** debt. The initial *First Amendment* question is whether the robocall restriction, *with the government-debt exception*, is content-based. The answer is yes." (emphasis added)); *id. at 2356-57* (Sotomayor, J., concurring in the judgment) ("Even under intermediate scrutiny, the Government has not explained how a debt-collection robocall about a government-backed debt is any less intrusive or could be any less harassing than a debt-collection robocall about a privately backed debt."); *id. at 2364* (Gorsuch, J., concurring in the judgment in part and dissenting in part) ("The statute is content-based because it allows speech on a subject the government favors (collecting its debts) while banning speech on other disfavored subjects (including political matters).").

This is not a situation where "one section of a [provision]" being "repugnant to the Constitution" does not "render[] the whole [provision] void." See *Seila Law LLC v. CFPB, 140 S. Ct. 2183, 2208, 207 L. Ed. 2d 494 (2020)* (plurality opinion) (quoting *Loeb v. Columbia Twp. Trs., 179 U.S. 472, 490, 21 S. Ct. 174, 45 L. Ed. 280 (1900))*. Precisely the opposite is the case here: the *entirety* of the pre-severance version of *§ 227(b)(1)(A)(iii)* is void because it *itself* was repugnant to the Constitution before the Supreme Court restored it to constitutional health in AAPC.

As a further matter, "severability" functions as a "remedy" in this context. **[\*14]** See, e.g., *id. at 2356* (plurality opinion) (rejecting Justice Gorsuch's "proposed remedy of injunctive relief"); *id. at 2365-67* (Gorsuch, J., concurring in the judgment in part and dissenting in part) (criticizing the plurality's imposition of a severance "remedy"). **HN7**[↑] A remedy is only necessary where there has first been a "wrong." In this context, that wrong was experienced by Charter and all other robocallers (or would-be robocallers) whose constitutionally protected speech was outlawed while Congress affirmatively blessed robocalls of other content in violation of the *First Amendment*. The policy implications of this finding are beyond the Court's purview - indeed, any added likelihood that defendants may evade liability for robocalls that Congress would have preferred to ban from 2015 to 2020 is the unfortunate price of the Court's enforcement of a constitutionally dictated result. It is for the elected branches, and not this Court, to determine whether that price is unduly high.[5] Legislative choices have consequences.

In any event, the unconstitutional *amended* version of *§ 227(b)(1)(A)(iii)* is what applied to Charter at the time of the challenged communications at issue, and that fact deprives the Court of subject matter jurisdiction **[\*15]** to adjudicate Charter's liability with regard to such communications. See, e.g., *Baucum, 80 F.3d at 541-42* (observing that federal courts are without jurisdiction to enforce violations of an unconstitutional statute "since there is no valid 'law of the United States' to enforce").

B.

With respect to the lone remaining violation asserted by the plaintiffs - the allegedly unlawful text message Charter sent Stacy Creasy on July 11, 2020 - Charter likewise seeks dismissal for lack of subject matter jurisdiction. However, Charter offers little to no support for this argument, and the Court dismisses it out of hand - indeed, it flies in the face of each of the Court's holdings with regard to the communications that *pre*-dated AAPC. See supra subsection I.A.3.

In the alternative, Charter urges the Court to dismiss this claim under *Rule 12(b)(6)*. That argument also fails.

**HN8**[↑] *Rule 12(b)(6) of the Federal Rules of Civil Procedure* allows a party to move for dismissal of a complaint that fails to state a claim upon which relief can be granted. "To survive a motion to dismiss" under *Rule 12(b)(6)*, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)* (quoting *Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007))*. To demonstrate a facially plausible basis for relief, a plaintiff **[\*16]** must plead facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. In determining whether a plaintiff has met this burden, a court must "accept all well-pleaded facts as true and view all facts in the light most favorable to the plaintiff," but must not accord an assumption of truth to conclusory allegations and threadbare assertions. *Thompson v. City of Waco, 764 F.3d 500, 502 (5th Cir. 2014)*.

The foregoing presumptions are not to be applied mindlessly, however. Thus, in considering a motion to dismiss, the Court may review any documents attached to or incorporated into the plaintiff's complaint by reference. *Causey v. Sewell Cadillac-Chevrolet, Inc., 394 F.3d 285, 288 (5th Cir. 2004)*. In addition, the Court may judicially notice matters of public record and other facts not subject to reasonable dispute. See *United States ex rel. Willard v. Humana Health Plan of Tex. Inc., 336 F.3d 375, 379 (5th Cir. 2003)*.

Applying these standards to the plaintiffs' lone remaining claim is relatively straightforward. In Paragraph 40 of the Amended Complaint, the plaintiffs allege that plaintiff

---

[5] Query whether it would be good and fair policy to punish the class of speakers that bore the brunt of an unconstitutional provision while letting off the hook the class of speakers that benefited from such a provision. Cf. *AAPC, 140 S. Ct. at 2366* (Gorsuch, J., concurring in the judgment in part and dissenting in part) ("[A] holding that shields *only* government-debt collection callers from past liability under an admittedly unconstitutional law would wind up endorsing the very same kind of content discrimination we say we are seeking to eliminate.").

Stacy Creasy received an unwanted text message[6] from Spectrum Mobile. "Spectrum Mobile" is a brand and subsidiary of defendant Charter Communications, Inc.[7] And the plaintiffs allege, correctly, that Charter "offers its services to consumers and businesses under the [*17] Spectrum brand." See Am. Compl. ¶ 9. Thus, Charter's argument that the plaintiffs fail to state a claim against *Charter* - as opposed to *Spectrum*, the alleged sender of the July 11, 2020 text message to Creasy - is unpersuasive at the motion to dismiss stage. Regardless, even if Charter Communications, Inc. and Spectrum Mobile, LLC are technically distinct entities as Charter avers, this fact is without legal consequence as "the Federal Communications Commission has ruled that, HN9[↑] under federal common-law principles of agency, there is vicarious liability for TCPA violations." Campbell-Ewald Co. v. Gomez, 577 U.S. 153, 136 S. Ct. 663, 674, 193 L. Ed. 2d 571 (2016) (citing In re Joint Petition Filed by Dish Network, LLC, 28 FCC Rcd. 6574 (2013)).

Accordingly, Charter falls one yard shy of the goal line in its effort to dispose of the entirety of the plaintiffs' Amended Complaint. With respect to the only improper communication they allege to have occurred after the Supreme Court's decision in AAPC, the plaintiffs do state a plausible claim upon which relief can be granted.

C.

Because the Court lacks subject matter jurisdiction over each of the plaintiffs' claims particular to plaintiff Tiffanie Hogans, Charter's personal jurisdiction [*18] arguments with regard to Ms. Hogans' claims need not - and *may not*[8] - be addressed.

---

[6] HN10[↑] As interpreted by the FCC, the TCPA's robocall restriction "bars both automated voice calls and automated text messages." AAPC, 140 S. Ct. at 2344 n.1 (citing In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 18 FCC Rcd. 14014, 14115 (2003)).

[7] See Charter Commc'ns, About Charter, corporate.charter.com/about-charter (last visited Sept. 26, 2020). This fact is not subject to reasonable dispute and is therefore judicially noticeable at the motion to dismiss stage. See Willard, 336 F.3d at 379.

[8] Cf. Sinochem Int'l Co. v. Malay. Int'l Shipping Corp., 549 U.S. 422, 436, 127 S. Ct. 1184, 167 L. Ed. 2d 15 (2007) HN11[↑] ("If . . . a court can readily determine that it lacks jurisdiction over the cause or the defendant, the proper course [is] to dismiss on that ground.").

II.

As an alternative to total dismissal, Charter seeks a stay of these proceedings pending the Supreme Court's decision in Facebook, Inc. v. Duguid, No. 19-511. Oral argument in Facebook has been set for December 8, 2020, and the Court will presumably enjoy a full complement of Justices by the end of October Term 2020. Accordingly, a 2021 decision in Facebook is probable. Because such a decision would illuminate an unsettled area of the law that is key to this case, and because a stay will promote judicial economy, conserve party resources, and increase the likelihood of a just and correct outcome, the Court determines that a stay of these proceedings is warranted.

A.

HN12[↑] [T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance.

Landis v. N. Am. Co., 299 U.S. 248, 254-55, 57 S. Ct. 163, 81 L. Ed. 153 (1936).

HN13[↑] "The proponent of a stay bears the burden of establishing its need." Clinton v. Jones, 520 U.S. 681, 708, 117 S. Ct. 1636, 137 L. Ed. 2d 945 (1997).

B.

The circumstances here [*19] firmly favor a stay for several related reasons. All stem from the fact that a decision in Facebook promises to significantly hone the issues in this case. In Facebook, the Court will resolve a circuit split[9] concerning the scope of the TCPA's definition of an "automatic telephone dialing system" (ATDS). In particular, the Court will determine "[w]hether the definition of ATDS in the TCPA encompasses any device that can 'store' and 'automatically dial' telephone numbers, even if the device does not 'us[e] a random or sequential number generator." Facebook, Inc. v. Duguid, No. 19-511, 2020 U.S. LEXIS 3559 (U.S. July

---

[9] Compare, e.g., Duguid v. Facebook, Inc., 926 F.3d 1146 (9th Cir. 2019), with, e.g., Dominguez ex rel. Himself v. Yahoo, Inc., 894 F.3d 116 (3d Cir. 2018).

*9, 2020)*.

The answer to that question has immediate bearing on the scope of the plaintiffs' action. Because the plaintiffs allege that Charter was attempting to contact a particular customer in its July 11, 2020 text message to Ms. Creasy, a decision by the Supreme Court that an ATDS must employ a random or sequential number generator for liability to attach under the TCPA would likely be dispositive of the plaintiffs' action.

Thus, in its significant potential to narrow and refine the issues in this case, a decision in Facebook promises to benefit the parties and the **[*20]** Court in a multitude of ways. Among other likely benefits, pausing this litigation in wait of a ruling in Facebook may (1) prevent a waste of judicial and party resources in the event that Facebook clearly dictates that the plaintiffs' remaining claims are without merit, (2) limit and streamline discovery in the event that the plaintiffs' claims *do* have merit, and (3) reduce the risk of an incorrect decision by sharpening the legal issues at play.

Against these benefits, there is little conceivable risk to any party. Indeed, while a stay will slow the plaintiffs' pursuit of a possible recovery, it will not pose a substantial risk of loss of evidence (since Charter is a sophisticated defendant that is presumably well aware of its preservation obligations) or continued, unremedied harm.

Largely for these reasons, a great number of similarly situated courts have issued stays pending a decision in Facebook. See Mot. to Stay at 9 (collecting cases).

Accordingly, in its best "exercise of judgment," the Court deems Charter's proposed stay to be well warranted. See *Landis, 299 U.S. at 254*.

**Conclusion**

The Supreme Court's decision in AAPC cannot logically be read as anything other than a ruling that *§ 227(b)(1)(A)(iii)* was unconstitutional **[*21]** in the form in which the Court received it. *That* version of the provision, which included the government-debt exception that the Court has now severed, was unconstitutional when Charter engaged in all but one of the allegedly illegal communications the plaintiffs complain of.

An unconstitutional statute being "as no law," the Court may not enforce the pre-AAPC version of *§ 227(b)(1)(A)(iii)* against Charter here. While this compels dismissal of the bulk of the plaintiffs' claims, the plaintiffs have stated a plausible claim with regard to the single communication they allege to have occurred *after* AAPC cured *§ 227(b)(1)(A)(iii)*'s constitutional defect and preserved *§ 227(b)(1)(A)(iii)* as a going concern.

Because the viability of the plaintiffs' surviving claim will turn in large part on the Supreme Court's forthcoming decision in Facebook, Inc. v. Duguid, staying this action in wait of such a decision is the best course.

* * *

Accordingly, for the foregoing reasons, IT IS ORDERED:

1. That the defendant's motion to dismiss is GRANTED with respect to all asserted TCPA violations alleged to have occurred before July 6, 2020;

2. That the defendant's motion to dismiss is DENIED with respect to all asserted TCPA violations alleged to have occurred after **[*22]** July 6, 2020;

3. That the defendant's motion to stay is GRANTED; and

4. That these proceedings are accordingly STAYED pending dispositive action by the Supreme Court in Facebook, Inc. v. Duguid, No. 19-511.

New Orleans, Louisiana, September 28, 2020

/s/ Martin L. C. Feldman

MARTIN L. C. FELDMAN

UNITED STATES DISTRICT JUDGE

---

**End of Document**