IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| DIANN L. MOODY,           ) | |
| ) | |
| Plaintiff,           ) | |
| ) | |
| v.           ) | CIVIL ACTION NO. 5:20-cv-61 (MTT) |
| ) | |
| SYNCHRONY BANK, *et al.*,           ) | |
| ) | |
| Defendants.           ) | |

**ORDER**

After an initial motion to dismiss and an amended complaint, Moody's only remaining claim is for alleged use of prerecorded voice calls in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. Docs. 11; 12. Defendant Synchrony Bank moves to dismiss Plaintiff Diann L. Moody's amended complaint. Doc. 14. Synchrony argues only that "the Supreme Court has ruled that the TCPA was unconstitutional from November 2015 through June 2020." Doc. 14-1 at 5. But the Supreme Court has not ruled that. Rather, the Supreme Court ruled that an exception to the TCPA for government debt collectors was unconstitutional. *Barr v. Am. Ass'n of Pol. Consultants*, *Inc.*, 140 S. Ct. 2335, 2343 (2020) ("*AAPC*"). Moody's allegations do not involve the collection of government debt. Instead, Synchrony argues that even though *AAPC* held that the government-debt exception was severable from the rest of the TCPA, the *AAPC* decision still rendered the *entirety* of the TCPA invalid from 2015 to 2020.

To be clear, a three-Justice plurality of the Court in *AAPC* already rejected that interpretation of the Court's order, concluding that "our decision today does not negate the liability of parties [such as Synchrony] who made robocalls covered by the robocall restriction." *Id*. at 2355 n.12 (plurality opinion). Nor did a concurrence or dissent in *AAPC* embrace Synchrony's argument. As discussed below, it is a long chain of reasoning that leads from the *AAPC* decision to Synchrony's argument that the TCPA was invalid from 2015 to 2020.

That is why Synchrony's statement that "the Supreme Court has ruled that the TCPA was unconstitutional from November 2015 through June 2020" is misleading. Still, the Court attempts to follow Synchrony's long chain of reasoning, then explain why it is mistaken, below.

## I.   STANDARD

The Federal Rules of Civil Procedure require that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To avoid dismissal pursuant to Rule12(b)(6), a complaint must contain sufficient factual matter to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). A claim is facially plausible when "the court [can] draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) (internal quotation marks and citations omitted).

At the motion to dismiss stage, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *FindWhat Inv'r Grp. v. FindWhat.com.*, 658 F.3d 1282, 1296 (11th Cir. 2011) (internal quotation marks and citations omitted). But "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Wiersum v. U.S. Bank, N.A.,* 785 F.3d 483, 485 (11th Cir. 2015) (internal quotation marks and citation omitted). The complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (internal quotation marks and citation omitted). Where there are dispositive issues of law, a court may dismiss a claim regardless of the alleged facts. *Patel v. Specialized Loan Servicing, LLC*, 904 F.3d 1314, 1321 (11th Cir. 2018) (citations omitted).

## II.   DISCUSSION

The TCPA prohibits telephone calls made using an automatic telephone dialing system or a prerecorded voice. 47 U.S.C. § 227(b)(1)(A)(iii). In 2015, Congress amended that restriction to exempt calls "'made solely to collect a debt owed to or guaranteed by the United States.'" *AAPC*, 140 S. Ct. at 2344-45 (plurality opinion) (quoting 129 Stat. 588). Four political organizations that wished to make robocalls to cell phones sued, arguing the government-debt exception rendered the prohibition a content-based restriction on speech, in violation of the First Amendment. *Id*. at 2345. In a fractured decision, the Supreme Court held (1) that the government-debt exception violated the First Amendment, but (2) the exception was severable from the remainder of the statute.

As noted, Synchrony argues that decision rendered the statute retroactively unconstitutional, as a whole, for the years between 2015 (when the statute was amended) and 2020 (when the Court decided *AAPC*).  See Doc. 14-1 at 5-6.  Synchrony gets there by proposing a novel theory of severability.  According to Synchrony, when a court finds that a statutory scheme contains an invalid provision, but that provision is severable, two things happen.  First, the statutory scheme is retroactively invalidated *in its entirety*.  Second, the remaining, constitutional provisions *become* valid, but only prospectively.  Doc. 14-1 at 14-15.  The result is that the entire statute was a nullity before the court found it was severable, and the constitutionally valid provisions are valid only after the court decision.[1]  Synchrony cites two district court orders that have reached the same conclusion.  *Creasy v. Charter Commc'ns, Inc.*, 2020 WL 5761117 (E.D. La. Sept. 28, 2020); *Lindenbaum v. Realgy*, 2020 WL 6361915 (N.D. Ohio Oct. 29, 2020); *but see Abramson v. Fed. Ins. Co.*, 2020 WL 7318953, at *2 (M.D. Fla. Dec. 11, 2020) (noting that "the vast majority of cases this Court has reviewed conclude that parties may continue to bring claims under the portions of § 227(b) unaltered by *AAPC*" and listing cases).

---

[1] Which court, and which decision?  It is unclear.  If, under Synchrony's argument, *appellate* courts can "save" a statute and render it valid, strange disparities would result.  For example, imagine if the Fourth Circuit holds in 2019 that a provision of a statute is unconstitutional but severable, and the Fifth Circuit in 2019 holds the same provision is valid.  In 2021, the Supreme Court holds it is unconstitutional but severable.  Under Synchrony's theory, the constitutionally valid provisions would be effective beginning in 2019 in the Fourth Circuit, but beginning in 2021 in the Fifth Circuit.
   Or perhaps Synchrony would argue that Supreme Court decisions alone can end the period when the entirety of the statute is invalid.  If so, is the relevant date the day when the decision issues, or when final judgment is entered?  And what happens, in the example above, if the Court denies certiorari?  Those hypothetical examples illustrate some of the problems with Synchrony's novel theory.

The Eleventh Circuit has not ruled on this issue, nor, apparently, has any other Circuit.[2] The first of the district court orders Synchrony cites, *Creasy*, recognized that its application of the severability doctrine was a novel one. *Creasy*, 2020 WL 5761117, at *5. *Creasy* applied what might be called a doctrine of "limited severability"[3]: the idea that one unconstitutional provision renders the whole statute invalid, that severance saves the constitutional provisions going forward, but severance does not save the statute retroactively (meaning, before the court's decision). Again, the *Creasy* court acknowledged this is not how severability usually works.[4]

Synchrony does not recognize that. Instead, Synchrony presumes that, as a general matter, "the cure of severance does not apply retroactively." Doc. 14-1 at 14. Synchrony cites and discusses at length another Supreme Court case, *Seila Law*, that addressed severability in the context of an unconstitutional provision of the Dodd-Frank

---

[2] The Sixth Circuit, where the plaintiff's appeal of *Lindenbaum* is pending, may be the first. The novelty of the decision has apparently provoked interest: thirty-four states and the District of Columbia have filed amicus briefs for the appellants, and the United States has intervened on behalf of the appellants.

[3] Although the court in *Creasy* did not give its severability doctrine a label, the Court believes a label is helpful, and that one seems as good as any.

[4] "The interpretive character of severability holdings . . . means that they cannot be understood as if they *changed* the law in the manner of a legislative amendment. . . . [a severability decision] is an authoritative statement of what the statute meant before as well as after the decision of the case giving rise to that construction. Were it otherwise . . . severability decisions would entail quintessentially legislative work. which is exactly what the Supreme Court has said they do *not* entail." *Lester v. United States*, 921 F.3d 1306, 1315 (11th Cir. 2019) (quotation marks and citations omitted) (statement of Pryor, J., respecting the denial of rehearing en banc); *see also Rivers v. Roadway Exp., Inc.*, 511 U.S. 298, 313 (1994) ("[W]hen this Court construes a statute, it is explaining its understanding of what the statute has meant continuously since the date when it became law. In statutory cases the Court has no authority to depart from the congressional command setting the effective date of a law that it has enacted."); John Harrison, *Severability, Remedies, and Constitutional Adjudication*, 83 Geo. Wash. L. Rev. 56, 87 (2014) ("Constitutional invalidity of federal statutes thus is produced by the Constitution itself, not by the order of a court").

Unlike in *Creasy*, the court in *Lindenbaum* assumed severance does not apply retroactively. And in contrast to the view of severability as a question of statutory interpretation, noted above, the *Lindenbaum* court concluded that judicial "[s]everance of the government-debt exception restored the statute to its pre-amendment constitutional standing." *Lindenbaum v. Realgy, LLC*, 2020 WL 6361915, at *4 (N.D. Ohio Oct. 29, 2020). Thus *Lindenbaum* treated severance as a judicial act that changes the law.

Act.  But *Seila Law* actually refutes Synchrony's argument.  *Seila Law* clearly applied the usual rule: that when a court finds an unconstitutional provision is severable, the remaining, constitutional provisions are valid, both prospectively and retroactively.

The court in *Creasy* agreed that that is the general rule.  However, it argued that an exception applies when the constitutional defect is content-based discrimination in violation of the First Amendment.  The court in *Creasy* interpreted *Seila Law* the same way the Court does—as applying severance both prospectively and retroactively.  However, the *Creasy* court distinguished *Seila Law*, finding that "[p]recisely the opposite is the case [for the TCPA]."  *Creasy*, 2020 WL 5761117, at *5.  Synchrony cites *Creasy* because it reached the same result—that is, comprehensive invalidation of the TCPA's robocall restriction from 2015 to 2020—but the court's reasoning was different.  Synchrony argues that comprehensive invalidation is simply how severance works; *Creasy* acknowledges that is not how it usually works, but argues that the TCPA presents a special case.

The Court need only address Synchrony's argument, which, again, is clearly refuted by *Seila Law*.  However, because Synchrony cites *Creasy* and one other district case that relies on *Creasy*, the Court also addresses the reasoning of those cases.

**A.      Synchrony provides no support for limited severability**

Synchrony extensively discusses a Supreme Court case—*Seila Law, LLC v. CFPB*, 140 S. Ct. 2183, 2208-09 (2020)—as a "particularly instructive" illustration of its argument.  Doc. 14-1 at 12.  But *Seila Law* refutes Synchrony's argument.  To see why, some detail is necessary.

Seila Law, LLC, was "a California-based law firm that provide[d] debt-related legal services to clients." *Seila Law*, 140 S. Ct. at 2194.  In 2017, the Consumer Financial Protection Bureau (CFPB) issued a civil investigative demand (CID) to Seila.  Seila refused to comply, and the CFPB sued in federal court to enforce the CID.  As a defense, Seila claimed that the CFPB's structure—specifically, its being headed by a single Director, with broad powers, who was removable only for cause—violated the Constitution.  *Id*. at 2194-95.  The district court and court of appeals rejected Seila's argument, but the Supreme Court reversed, finding the CFPB Director's removal protections were unconstitutional.

The Government argued that the CID was nonetheless enforceable because, although it was issued by a Director with removal protections, it had later been ratified by an Acting Director, who did not have the same removal protections.  *Id*. at 2208.  That raised a factual issue to be resolved on remand.  *Id*.  Seila further argued, however, that remand would be futile because the removal protections were not severable from the rest of the provisions of the Dodd-Frank Act creating the CFPB.  As such, Seila argued, the CFPB as a whole was unconstitutional, so it did not matter whether an Acting Director had ratified the CID or not—it was unenforceable either way.

The Court rejected that argument, finding the removal protections were severable, so there was no need to strike down the whole CFPB.  Accordingly, the Court remanded to address the Government's argument that the CID, "though initially issued by a Director unconstitutionally insulated from removal, can still be enforced on remand because it *has since been ratified* by an Acting Director accountable to the President."  *Id*. (emphasis added).

Synchrony claims that the decision in *Seila Law* invalidated the entirety of the CFPB, retroactively, for several years.  It argues the "ratification" the Court referred to was some future act that the "post-severance" [5] (meaning post-*Seila Law*) CFPB might take to fix the actions of the 'pre-severance' CFPB, which was wholly unconstitutional. Doc. 14-1 at 13.

That misses two critical points.  First, the remand was to determine whether the CID "*has since been ratified*."  That language referred to a specific alleged action of a past Acting Director, not to the potential action of some future, "post-severance" CFPB. Thus, the Court held the Acting Director's prior action, if it actually occurred, was valid. That is flatly inconsistent with Synchrony's argument that the 'pre-severance' CFPB was wholly unconstitutional.

Second, the Court in *Seila Law* explicitly made that point.  Seila argued remand would be futile because all past actions of the CFPB were necessarily unconstitutional. But the Court rejected that argument.  *Seila Law*, 140 S. Ct. at 2208.  The reason is that the test for validity of the CID was not, as Synchrony contends, whether it was ratified after the Court's decision.  The test of validity was whether the CID was authorized by a director removable at will.

For those reasons, *Seila Law* clearly employed the severability doctrine in the traditional way: finding that the unconstitutional provisions of a law are (and were) invalid, and the constitutional provisions, if severable, are (and were) valid.  Under that approach, of course, Moody's TCPA claims remain cognizable because they are based

---

[5] The Court retains this in quotes because the term is Synchrony's.  'Pre-severance' is not a term Synchrony uses, but the Court finds the term is helpful only for the sake of exploring Synchrony's line of reasoning.  Thus it is in single quotes.

on a valid provision of the TCPA that the Court explicitly held was severable from the provision found invalid in *AAPC*. *Seila Law*, far from supporting Synchrony's argument, confirms that its motion should be denied.[6]

## B. First Amendment concerns provide no reason to apply limited severability in this case

Even if Synchrony is wrong about how severability usually works, perhaps *AAPC* was an exception. That appears to have been the court's position in *Creasy v. Charter Communications, Inc.*, 2020 WL 5761117 (E.D. La. Sept. 28, 2020), when it granted in part and denied in part a motion to dismiss arguing that *AAPC* invalidated the TCPA.

*Creasy*'s exception was based on First Amendment concerns expressed by Justice Gorsuch in his partial dissent. He disagreed with the plaintiffs over the appropriate remedy. The plaintiffs in *AAPC* were political organizations that sought a declaratory judgment invalidating the TCPA's restrictions on robocalls as violative of the First Amendment. *AAPC*, 140 S. Ct. at 2345. The plaintiffs argued that the TCPA's exception for government-debt collectors was a content-based restriction on speech.

The Court agreed, but rather than "leveling the plaintiff 'up' to the status others enjoy"—that is, allowing the plaintiffs to make robocalls, too; the Court 'leveled down' government-debt collectors so that they, too, were prohibited from making robocalls. *Id*. at 2365 (Gorsuch, J., concurring in part and dissenting in part). "Applying traditional

---

[6] To take one more example, in *Marbury v. Madison*, 5 U.S. 137 (1803), the Supreme Court held that part of the Judiciary Act of 1789 was unconstitutional. The Court severed the unconstitutional provision; if it had not severed it, "the entire Judiciary Act of 1789 would be invalid as a consequence of *Marbury v. Madison*." *AAPC*, 130 S.Ct. 2351. But according to Synchrony's argument here, *Marbury* retroactively invalidated the Judiciary Act, which, among other provisions, set the number of Justices and gave the Supreme Court original jurisdiction over actions between states. Followed to its logical conclusion, therefore, Synchrony's argument may well invalidate all Supreme Court decisions (or perhaps all federal courts' decisions) from 1789 to 1803. But the Court did not seem to believe it was doing that in *Marbury*, and decisions from that period are regularly cited as precedent. *See, e.g.*, *Carmell v. Texas*, 529 U.S. 513, 521 (2000) (discussing *Calder v. Bull*, 1 L.Ed. 648 (1798)).

severability principles, seven Members of the Court conclude[d] that the entire 1991 robocall restriction should not be invalidated, but rather that the 2015 government-debt exception must be invalidated and severed from the remainder of the statute." *Id*. at 2343 (plurality opinion).

Justice Gorsuch, joined by Justice Thomas, dissented, arguing the appropriate remedy was 'levelling up' and enjoining the enforcement of the TCPA against the plaintiffs.  Justice Gorsuch observed that the Court's invalidation of the government-debt exception failed to protect the plaintiffs' First Amendment rights, but instead simply restricted the speech of government-debt collectors, too. *Id*. at 2366 (Gorsuch, J., concurring in part and dissenting in part) ("somehow, in the name of vindicating the First Amendment, our remedial course today leads to the unlikely result that . . . more speech will be banned.").  To address that concern, Justice Kavanaugh suggested that government-debt collectors who had violated the TCPA's robocall prohibition might not be punished for that speech. *Id*. at 2355 n.12 (plurality opinion).  In response, Justice Gorsuch argued that shielding "*only* government-debt collection callers from past liability under an admittedly unconstitutional law would wind up endorsing the very same kind of content discrimination we say we are seeking to eliminate." *Id*. at 2366 (Gorsuch, J., concurring in part and dissenting in part).

The court in *Creasy* concluded that the risk of content discrimination identified by Justice Gorsuch rendered the law invalid at the time the government-debt exception was in place. *Creasy*, 2020 WL 5761117, at *2.  The court concluded that

> Congress's 2015 enactment of the government-debt exception rendered § 227(b)(1)(A)(iii) an unconstitutional content-based restriction on speech.  In the years *preceding* Congress's addition of the exception, § 227(b)(1)(A)(iii) did not discriminate on the content of robocalls, and was, as the Supreme

> Court has observed, a constitutional time-place-manner restriction on speech. Likewise, now that *AAPC* has done away with the offending exception, § 227(b)(1)(A)(iii) figures to remain good law in the years to come. However, in the years in which § 227(b)(1)(A)(iii) permitted robocalls of one category of content (government-debt collection) while prohibiting robocalls of all other categories of content, the *entirety* of the provision was, indeed, unconstitutional.

*Id*. The Court finds that conclusion unpersuasive, for four reasons.

First, the 2015 amendment did not render the entire robocall provision unconstitutional. Rather, the government-debt exception was void. "[A] unconstitutional statutory amendment 'is a nullity' and 'void' when enacted, and for that reason has no effect on the original statute." *AAPC*, 140 S. Ct. at 2353 (plurality opinion) (quoting *Frost v. Corporation Comm'n of Okla*., 278 U.S. 515, 526-527 (1929)). The Court's decision found the amendment was invalid when enacted, such that both government-debt collectors and other robocallers were subject to the TCPA. As a technical matter, therefore, the robocall restriction reached both government-debt collectors and other parties, like Synchrony.

Second, Justice Kavanaugh's "suggest[ion] that the ban on government-debt collection calls announced today might be applied only prospectively" does not change that. *Id*. at 2366 (Gorsuch, J., dissenting in part). First, that "suggestion" was only that—a suggestion—and did not, by itself, create the differential treatment that the *Creasy* decision sought to remedy.[7] Second, to the extent Justice Kavanaugh proposed that government-debt collectors should not be retroactively liable, that principle would presumably be founded on concerns about fair notice and good-faith reliance on the

---

[7] Neither Synchrony nor the defendants in *Creasy* were government debt collectors. Moreover, the Court is not aware of any precedent deciding that issue, nor any district court resolving that issue. Accordingly, any preferential treatment for government debt collectors between 2015 and 2020 created by the *AAPC* decision is, for now at least, hypothetical.

-11-

TCPA's exception. It does not amount to a holding that their conduct was *actually* lawful during that time. Thus there is no need to invalidate the whole statute to remedy a perceived disparity between government collectors and other robocallers, nor has the Court seen any cases applying such a drastic remedy in other contexts. [8]

Third, none of the opinions in *AAPC* even hinted that the TCPA's robocall restriction should be wholly invalid between 2015 and 2020, but valid in part after the Court's decision. Again, the Court 'levelled down', and Justice Gorsuch advocated 'levelling up', but only *Creasy* advocated levelling up for 2015 to 2020, but levelling down thereafter.

Fourth, *Creasy*'s holding requires a novel severability doctrine. As noted, *Creasy* found that traditional severability did not apply:

> This is *not* a situation where "one section of a [provision]" being "repugnant to the Constitution" does not "render[ ] the whole [provision] void." *See Seila Law LLC v. CFPB*, ⎯⎯ U.S. ⎯⎯, 140 S. Ct. 2183, 2208, 207 L.Ed.2d 494 (2020) (plurality opinion). Precisely the opposite is the case here: the *entirety* of the pre-severance version of § 227(b)(1)(A)(iii) *is* void because it *itself* was repugnant to the Constitution before the Supreme Court restored it to constitutional health in AAPC.

*Creasy*, 2020 WL 5761117, at *5 (emphasis added) (citation omitted). Nonetheless, a seven-Justice majority of the Court clearly held in *AAPC* that the government-debt

---

[8] To the contrary, at least one court rejected that approach in the analogous context of Equal Protection. In *Sessions v. Morales-Santana*, 137 S. Ct. 1678, 1688 (2017), Morales-Santana faced removal proceedings. He argued he derived citizenship from his father, Morales. Because his father had not been physically present in the United States for five years, an immigration judge ruled, he could not pass on citizenship to Morales-Santana. *Sessions v. Morales-Santana*, 137 S. Ct. 1678, 1688 (2017). At the time, 8 U.S.C. § 1401 contained an exception to the five-year physical-presence requirement for unwed mothers, who only had to be physically present in the United States for one year to pass their citizenship on to children born abroad. *Id.* at 1687. On appeal, Morales-Santana argued that that gender-based classification violated his Equal Protection rights. The Supreme Court agreed and concluded the proper remedy was to eliminate the exception and extend the five-year requirement to unwed mothers, too. *Id.* at 1701. The Court ruled that requirement would only apply to unwed mothers prospectively. *Id.* On remand, the Second Circuit affirmed the immigration judge, holding the five-year requirement still applied, retroactively, to Morales-Santana. *Morales-Santana v. Sessions*, 706 F. App'x 40, 41 (2d Cir. 2017).

exception was severable. Caught between its extension of Justice Gorsuch's dissent (which rejected a severance remedy) and the Court's holding that the statute was severable, the *Creasy* court landed on the fence and created limited severability. But that approach was unaccompanied by citations to any other examples, in First Amendment or other cases, applying severance that way.

In sum, AAPC does not support Synchrony's position that severance is generally non-retroactive; *Seila Law* refutes that position; and the Court finds unpersuasive the *Creasy* order's conclusion that the TCPA warrants a departure from traditional severability doctrine. Rather, this is an unexceptional case where the usual rules apply—or, at least, Synchrony's brief and supporting authorities have not convinced the Court otherwise.

### III.   CONCLUSION

For those reasons, Synchrony's motion to dismiss (Doc. 14) is **DENIED**.

**SO ORDERED**, this 26th day of March, 2021.

                                            S/ Marc T. Treadwell
                                            MARC T. TREADWELL, CHIEF JUDGE
                                            UNITED STATES DISTRICT COURT